UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PINNACLE ADVERTISING AND
MARKETING GROUP, INC.,

CASE NO. 9:18-cv-81606-DMM

    Plaintiff/Counter-Defendant,

**JURY DEMAND**

vs.

PINNACLE ADVERTISING AND
MARKETING GROUP, LLC,

    Defendant/Counter-Plaintiff.
_____/

## AMENDED COUNTERCLAIM

Counter-Plaintiff, Pinnacle Advertising and Marketing Group, LLC ("Pinnacle (FL)" or "Counter-Plaintiff"), sues the Counter-Defendant, Pinnacle Advertising and Marketing Group, Inc. ("Pinnacle (IL)" or "Counter-Defendant"), and alleges as follows:

### JURISDICTION, PARTIES AND VENUE

1. Counter-Plaintiff Pinnacle Advertising and Marketing Group, LLC is a limited liability company incorporated under the laws of the State of Florida with its principal place of business in Palm Beach County, Florida.

2. Counter-Defendant Pinnacle Advertising and Marketing Group, Inc. is a corporation organized under the laws of the State of Illinois, with its principal place of business in Schaumburg, IL.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4. Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Counter-Defendant transacts business within this judicial district. Further, the parties are in litigation in this judicial district and this is a counterclaim.

5. All conditions precedent to the filing of this cause have occurred or been waived and Counter-Plaintiff is entitled to pursue this litigation.

## ALLEGATIONS COMMON TO ALL COUNTS

6. Pinnacle (FL) provides advertising and marketing services to clients.

7. Pinnacle (FL) actively promotes its services and uses substantial time and resources to attract potential customers.

8. Pinnacle (FL) has been recognized in trade publications on numerous occasions for its work and growth as a company.

9. Pinnacle (FL) and its principal, Peter Gary ("PG"), are sought after and speak on a variety of advertising industry topics.

10. Pinnacle (FL) has spoken at and prominently displayed its name, brand, and mark at a variety of conferences, including the National Automobile Dealership Association ("NADA") Show (the "NADA Show").

11. Upon information and belief, Pinnacle (IL) formed Elevator-Advertising Chicago, LLC ("Elevator LLC") in June of 2010 to market to and service clients in the automotive industry.

12. Upon information and belief, Pinnacle (IL) formed Elevator-Advertising Chicago, Inc. ("Elevator Inc.") in July of 2011 to market to and service clients in the automotive industry.

13. PG has spoken on behalf of Pinnacle (FL) at the NADA Show and actively participated at other NADA shows.

14. Upon information and belief, Pinnacle (IL) representatives, agents, and principals have attended, among other events, the NADA Show and were aware of Pinnacle (FL)'s participation.

15. Upon information and belief, during the period of time that Pinnacle (FL) was actively marketing its brand, Pinnacle (IL) was using the "Elevator" brand name to market to the automotive industry.

16. In 2013, Pinnacle (FL) and Pinnacle (IL) made presentations to the same potential client.

17. Upon information and belief, Pinnacle (FL) and Pinnacle (IL) have pitched the same clients.

18. Pinnacle (IL) has been aware of Pinnacle (FL) since at least 2013; however, Pinnacle (IL) never attempted to enforce any purported trademark or other rights until 2018.

19. Upon information and belief, Pinnacle (IL) has received invoices and communications from vendors which were intended for Pinnacle (FL) (the "Mistake Invoices").

20. Rather than advise the vendors or Pinnacle (FL) of the Mistake Invoices, Pinnacle (IL) retained such invoices for the purpose of harming Pinnacle (FL)'s relationships.

21. Upon information and belief, potential clients who learned of Pinnacle (FL) at NADA were acquired by Pinnacle (IL) as clients due to Pinnacle (FL)'s efforts at NADA.

22. Upon information and belief, Pinnacle (IL)'s revenue from, among other industries, the automotive industry has increased substantially as a result of Pinnacle (FL)'s efforts.

23. Upon information and belief, Pinnacle (IL) has intentionally syphoned clients who intended to retain Pinnacle (FL).

24. On or about December 18, 2018, Pinnacle (IL) appeared on the CNBC show The Profit (the "Pinnacle Profit Episode") hosted by Marcus Lemonis ("Lemonis").

25. During the Pinnacle Profit Episode, Lemonis stated that Pinnacle (IL) is "an agency that I've used for probably 20 years…" (the "Relationship Representation").

26. Upon information and belief, the Relationship Representation was made to bolster Pinnacle (IL)'s reputation and to encourage potential clients to retain Pinnacle (IL).

27. Pinnacle (IL) has and continues to prominently display on its website, www.pinnacle-advertising.com (the "Pinnacle (IL) Website"), its appearance on the Pinnacle Profit Episode which contains the Relationship Representation.

28. Pinnacle (IL) has attempted to and continues to attempt to capitalize off of the appearance on The Profit and the Relationship Representation.

29. It has been discovered that the Relationship Representation is inaccurate and misleading.

30. Among other things, the business relationship between Pinnacle (IL) and Lemonis is less than half of the amount represented to a national television audience – 8 years rather than 20 years.

31. Despite conceding that the Relationship Representation is inaccurate, Pinnacle (IL) has continued to disseminate this false information to current, former, and potential clients.

32. Pinnacle (IL) has sued Pinnacle (FL) based upon a theory that the parties names are likely to confuse potential customers.

33. Pinnacle (IL) commenced this lawsuit and filed a motion seeking TRO on the basis that there would be a flurry of new clients after the Pinnacle Profit Episode aired. It turned out that such publicity relies upon the misleading Relationship Representation.

34. If it is accurate that potential customers could be confused regarding the identities of Pinnacle (IL) and Pinnacle (FL), then Pinnacle (IL)'s continued dissemination of the false Relationship Representation has a substantial likelihood of harming Pinnacle (FL)'s business as potential and actual customers will not trust Pinnacle (FL) if they believe it was responsible for the misrepresentation advanced through the Relationship Representation.

35. Pinnacle (FL) has utilized https://pinnacleadvertising.net ("Pinnacle (FL) Website") to promote its brand to customers since 2014.

36. Upon information and belief Pinnacle (IL), has been aware of Pinnacle (FL)'s Website since 2014.

37. Despite being aware of Pinnacle (FL)'s Website since 2014, Pinnacle (IL) never attempted to enforce any purported trademark rights until 2018.

38. Upon information and belief, Pinnacle (IL) waited to enforce its purported trademark rights in order to benefit from Pinnacle (FL)'s efforts and expenditure of resources.

39. Upon information and belief, Pinnacle (IL) waited to enforce its purported trademark rights in order to allow Pinnacle (FL) to build the presence of Pinnacle (FL)'s website in order to attempt to obtain same through improper and untimely litigation.

40. Pinnacle (FL) has been required to retain counsel in this action to represent it in this lawsuit.

## COUNT I – TORTIOUS INTERFERENCE

41. Counter-Plaintiff re-alleges and re-incorporates paragraphs 1 through 40 above.

42. Counter-Plaintiff had a business relationship with dealerships and other participants in the automotive industry.

43. Counter-Plaintiff had a business relationship with vendors who Counter-Plaintiff utilizes to provide services to Counter-Plaintiff's customers.

44. Counter-Defendant was aware of Counter-Plaintiff's relationship with, among others, dealerships and other participants in the automotive industry.

45. Counter-Defendant was aware of Counter-Plaintiff's relationship with its vendors.

46. Counter-Defendant intentionally and unjustifiably interfered with Counter-Plaintiff's a business relationship with dealerships and other participants in the automotive industry by pretending to be Pinnacle (FL) to capitalize on Pinnacle (FL)'s marketing efforts, including among other venues at NADA.

47. Counter-Defendant intentionally and unjustifiably interfered with Counter-Plaintiff's business relationship with its vendors by withholding invoices intended for Counter-Plaintiff.

48. Further, Counter-Defendant intentionally and unjustifiably interfered with Counter-Plaintiff's business relationship by disseminating the misleading Relationship Representation.

49. Counter-Plaintiff has suffered damages as a result of Counter-Defendant's conduct.

WHEREFORE, Counter-Plaintiff respectfully requests this court to enter judgment in favor of Counter-Plaintiff and against Counter-Defendant for compensatory damages, together with statutory interest, taxable costs, attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), and an injunction preventing further interference with Counter-Plaintiff's business relationships, and such other legal and equitable relief as this court may deem reasonable and appropriate under the circumstances.

## COUNT II – UNJUST ENRICHMENT[1]

---

[1] Allegations in this count are based upon Counter-Defendant's claim in the instant lawsuit and are not an admission by Counter-Plaintiff that such allegations are true.

50. Counter-Plaintiff re-alleges and re-incorporates paragraphs 1 through 40 above.

51. Counter-Plaintiff conferred a benefit on the Counter-Defendant including Counter-Plaintiff's efforts to build an advertising company and brand through the use of "Pinnacle" and the Pinnacle (FL) Website and Pinnacle (IL) had knowledge of such benefit.

52. Defendant voluntarily accepted and retained the benefit conferred by Pinnacle (FL) and benefited from any confused potential customer.

53. The circumstances here, where confused potential customers retained Pinnacle (IL) as a result of Pinnacle (FL)'s efforts and resources, render Counter-Defendant's retention of the benefit inequitable unless the Counter-Defendant pays to the Counter-Plaintiff the value of the benefit.

54. Further, Counter-Defendant's continued promotion and dissemination of the false Reputation Representation is harming Counter-Plaintiff.

WHEREFORE, Counter-Plaintiff respectfully requests this court to enter judgment in favor of Counter-Plaintiff and against Counter-Defendant for compensatory damages, together with statutory interest, taxable costs, attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), and an injunction preventing Counter-Defendant from utilizing Counter-Plaintiffs efforts to obtain clients and from promoting any further connections The Profit, and such other legal and equitable relief as this court may deem reasonable and appropriate under the circumstances.

## **COUNT III – TRADE DRESS INFRINGEMENT**

55. Counter-Plaintiff re-alleges and re-incorporates paragraphs 1 through 40 above.

56. Counter-Plaintiff has a recognized common law trademark within the geographic market that it provides services under the "Pinnacle" mark as Counter-Defendant did not obtain a

registered trademark until after Counter-Plaintiff began using the "Pinnacle" mark within that geographic market.

57. Counter-Plaintiff is the prior user of the "Pinnacle" trade dress within the market that it provides services.

58. Counter-Plaintiff's trade dress and usage of "Pinnacle" is inherently distinctive or has acquired secondary meaning.

59. The features of the Counter-Plaintiff's trade dress as "Pinnacle" are primarily non-functional.

60. Counter-Plaintiff and Counter-Defendant's trade dress are confusingly similar.

61. Counter-Plaintiff has suffered damages as a result of Counter-Defendant's actions.

WHEREFORE, Counter-Plaintiff respectfully requests this court to enter judgment in favor of Counter-Plaintiff and against Counter-Defendant for compensatory damages, together with statutory interest, taxable costs, attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), and an injunction preventing Counter-Defendant from its name or similar names which use Pinnacle within geographic areas where Pinnacle (FL) was the prior user, and such other legal and equitable relief as this court may deem reasonable and appropriate under the circumstances.

## COUNT IV – REVERSE DOMAIN HIGHJACKING[2]

62. Counter-Plaintiff re-alleges and re-incorporates paragraphs 1 through 40 above.

63. Counter-Plaintiff has a recognized common law trademark within the geographic market that it provides services under the "Pinnacle" mark as Counter-Defendant did not obtain a registered trademark until after Counter-Plaintiff began using the "Pinnacle" mark within that geographic market.

---

[2] Allegations in this count are based upon Counter-Defendant's claim in the instant lawsuit and are not an admission by Counter-Plaintiff that such allegations are true.

64. Counter-Plaintiff is the rightful owner of the Pinnacle (FL) Website domain.

65. Counter-Defendant is the purported trademark owner of a certain wordmark utilizing "Pinnacle."

66. Counter-Defendant was aware of Counter-Plaintiff's name, use of trade dress, use of mark, and use of Pinnacle Website; however, Counter-Defendant did not act in any manner to enforce any purported trade rights until 2018.

67. Counter-Defendant is improperly attempting to reverse domain highjack Pinnacle (FL)'s Website for its own purposes after allowing Pinnacle (FL) to build up the traffic and notoriety of such domain.

68. Counter-Defendant's conduct is in violation of the Uniform Domain Name Dispute Resolution Policy ("UDRP").

69. Counter-Plaintiff has suffered damages as a result of Counter-Defendant's actions.

WHEREFORE, Counter-Plaintiff respectfully requests this court to enter judgment in favor of Counter-Plaintiff and against Counter-Defendant for compensatory damages, together with statutory interest, taxable costs, attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), and an injunction preventing Counter-Defendant from any attempt to acquire Pinnacle (FL)'s Website and domain, and such other legal and equitable relief as this court may deem reasonable and appropriate under the circumstances.

## COUNT V - DECLARATORY JUDGMENT OF NON-INFRINGEMENT

70. Counter-Plaintiff re-alleges and re-incorporates paragraphs 1 through 40 above.

71. Counter-Plaintiff uses the term "Pinnacle" in its trade name to designate its services in the advertising and marketing field.

72. As set forth more fully in Plaintiff's Complaint, there is an actual and ongoing controversy between Plaintiff/Counter-Defendant and Defendant/Counter-Plaintiff as to whether the use by Counter-Plaintiff of the "Pinnacle" term in its trade name infringes upon Plaintiff's rights under federal law in its registered Mark.

73. Plaintiff's claims for infringement under 15 U.S.C. §1114 and 1125 for trademark infringement, unfair competition and cybersquatting all require showing of a valid and protectable trademark.

74. Plaintiff's Mark is merely descriptive in that it immediately describes a characteristic of the services provided, namely being the "best" or "top". Plaintiff has not achieved "secondary meaning" necessary to protect its mark. Accordingly, its mark is not valid nor protectable.

75. Plaintiff's claims under 15 U.S.C. §1114 and 1125 for trademark infringement, unfair competition and cybersquatting all require a showing of likelihood of confusion by consumers or potential consumers of the parties' services.

76. There is no likelihood of confusion created by Counter-Plaintiff's use of its trade name, because consideration of the factors set forth in *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir.1999) leads to the conclusion that there is no likelihood of confusion.

77. Among other *Frehling* factors is the fact that the "Pinnacle" term that the Counter-Plaintiff's and Counter-Defendant's marks have in common is a generic term for being the best or being "at the top" of a given field or group. The term has been extensively used in its generic sense by people within and without the advertising and marketing industry to describe a person or entity reaching the height of achievement.

78. Among the *Frehling* factors, evidence of actual confusion is of the utmost importance. Plaintiff/Counter-Defendant has not and cannot present any evidence of actual confusion by consumers of the services offered by the parties.

79. Finally, in applying the *Frehling* factors, the court must make a determination of the strength of a plaintiff's mark based on whether a plaintiff's mark is (in ascending order of strength) generic, descriptive, suggestive, or arbitrary. Plaintiff/Counter-Defendant's mark is weak and therefore not entitled to protection.

80. For these and other reasons, there is no likelihood of confusion created by Defendant/Counter-Plaintiff's use of the term "Pinnacle" in its name.

WHEREFORE, Counter-Plaintiff respectfully requests this court to enter judgment in favor of Counter-Plaintiff and against Counter-Defendant for declaratory judgment of non-infringement by Counter-Plaintiff, compensatory damages, together with statutory interest, taxable costs, attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), and an injunction preventing Counter-Defendant from any attempt to acquire Pinnacle (FL)'s Website and domain, and such other legal and equitable relief as this court may deem reasonable and appropriate under the circumstances.

## **COUNT VI - CANCELLATION OR RESTRICTION OF REGISTRATION**

81. Counter-Plaintiff re-alleges and re-incorporates paragraphs 1 through 40 above.

82. Plaintiff/Counter-Defendant is the registrant of the mark PINNACLE ADVERTISING & MARKETING GROUP for "Advertising agency services; Advertising and marketing; Advertising services," U.S. Trademark Registration No. 5,269,641.

83. This is an action involving a registered mark, *i.e.* the mark set forth in the aforementioned registration. Accordingly, this Court is granted jurisdiction to "determine the right

to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

84.     Plaintiff/Counter-Defendant's mark is descriptive in that its definition is synonymous with a quality of the services provided, namely being the best or "at the top" of the field. Plaintiff/Counter-Defendant's mark has not become "distinctive of [its] [services] in commerce." 15 U.S.C. § 1025(f). Accordingly, the trademark is invalid, and the corresponding registration should be cancelled.

85.     Alternatively, the dominant portion of Plaintiff/Counter-Defendant's mark is the term PINNACLE, which is a generic term for the best or top of any field or group. Accordingly, that term in the registration should be ordered disclaimed pursuant to 15 U.S.C. § 1056(a).

WHEREFORE, Counter-Plaintiff respectfully requests this court to order cancellation of Plaintff/Counter-Defendant's U.S. Trademark Registration No. 5,269,641, or an order requring the registration to be amended to include a disclaimer of the term PINNACLE as generic in the standard language used by the U.S. Patent and Trademark Office, *i.e.* "no claim is made to the exclusive right to use PINNACLE apart from the mark as shown," compensatory damages, together with statutory interest, taxable costs, attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), and an injunction preventing Counter-Defendant from any attempt to acquire Pinnacle (FL)'s Website and domain, and such other legal and equitable relief as this court may deem reasonable and appropriate under the circumstances.

## JURY DEMAND

Counter-Plaintiff Pinnacle Advertising and Marketing Group, LLC demands a trial by jury of all issues triable to a jury.

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that on this 31st day of May, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

Respectfully submitted,

**MARSHALL GRANT, PLLC**
*Counsel for Defendant*
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: 561.361.1000
Facsimile: 561.672.7581
Email: jgrant@marshallgrant.com
tzeichman@marshallgrant.com

By:   /s/ Joe M. Grant
JOE M. GRANT
Florida Bar No. 137758
THOMAS. G. ZEICHMAN
Florida Bar No. 99239

**SRM LAW**
*Counsel for Defendant*
150 N. Michigan Avenue, 8th Floor
Chicago, IL 60601
(312) 564-5757 (p)
(312) 564-5758 (f)
jmozwecz@srmlaw.com

By:   /s/ Jennifer L. Mozwecz
JENNIFER L. MOZWECZ
Illinois Bar No. 6298582

## SERVICE LIST

**16-01439-AJC Notice will be electronically mailed to:**

Jason S. Toscano, Esquire and Jon M. Gibbs, Esquire on behalf of Plaintiff;
james.toscano@lowndes-law.com; jon.gibbs@lowndes-law.com;
carol.anderson@lowndes-law.com, litcontrol@lowndes-law.com

Nicholas S. Lee, Esquire on behalf of Plaintiff; nlee@bdl-iplaw.com

Edward L. Bishop, Esquire on behalf of Plaintiff; ebishop@bdl-iplaw.com

Jon Michael Gibbs, Esquire on behalf of Plaintiff; jon.gibbs@lowndes-law.com

Thomas G. Zeichman; tzeichman@marshallgrant.com

Joe M. Grant; jgrant@marshallgrant.com