## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PINNACLE ADVERTISING AND
MARKETING GROUP, INC.,

      Plaintiff,

vs.

PINNACLE ADVERTISING AND
MARKETING GROUP, LLC,

      Defendant.

_____/

CASE NO. 9:18-cv-81606-DMM

District Judge: Hon. Donald M. Middlebrooks
Magistrate Judge: Hon. Bruce E. Reinhart

## DEFENDANT PINNACLE'S *DAUBERT* MOTION TO EXCLUDE
## EXPERT OPINIONS OF ROB WALLACE

Defendant, Pinnacle Advertising and Marketing Group, LLC ("Defendant Pinnacle")
moves to exclude the expert report and opinions of Plaintiff Pinnacle Advertising and Marketing
Group, Inc. ("Plaintiff Pinnacle") expert witness, Rob Wallace, pursuant to Fed. R. Evid. 702 and
*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

## <u>INTRODUCTION</u>

This is a Lanham Act action arising from Plaintiff Pinnacle's assertion that Defendant
Pinnacle has infringed on Plaintiff Pinnacle's trademark (which was obtained in September of
2017; while Defendant Pinnacle was formed in 2010). Plaintiff brought the above-styled lawsuit
against Pinnacle on November 21, 2018, raising claims for: (1) Trademark Infringement under the
Lanham Act § 1114; (2) Unfair Competition under the Lanham Act § 1125(a); and (3)
Cybersquatting under the Lanham Act §1125(d). [D.E. 1]. On May 20, 2019, Pinnacle (FL) filed
its Answer to the Plaintiff's Complaint which, among other things, asserted affirmative defenses,
including: (i) laches; (ii) abandonment; (iii) unclean hands; (iv) consent or acquiescence; (v)
waiver: (vi) estoppel; (vii) statute of limitations; (vii) prior use; and (viii) good faith. [D.E. 44].

On June 25, 2019, Plaintiff Pinnacle served its expert disclosures and expert report of Rob Wallace.[1]  Among other things, the report includes a survey which Pinnacle (FL) asserts does not comport with accepted practices and utilizes a flawed methodology.  Further, the report reaches legal conclusions which is inappropriate for an expert.  Finally, to the Wallace report contains speculation regarding damages which appear to be cumulative given that Pinnacle (IL) has designated two other experts to provide a damages analysis.  Accordingly, Pinnacle (FL) requests that the report and opinions of Wallace be excluded and stricken.[2]

## **BACKGROUND**

### Nature of Dispute.

Plaintiff Pinnacle, based in Illinois, provides advertising and marketing services.  Plaintiff Pinnacle utilizes a website at pinnacle-advertising.com (the "Pinnacle (IL) Domain").  Plaintiff Pinnacle was formed in 1998 and did not obtain the trademarks at issue in this litigation until September of 2017.

Defendant Pinnacle, based in Florida, provides among other things advertising and marketing services.  Defendant Pinnacle utilizes a website at pinnacleadvertising.net (the "Pinnacle (FL) Domain").  Defendant Pinnacle was formed in 2010.

No enforcement of the trademarks occurred until Plaintiff Pinnacle filed a lawsuit against Defendant Pinnacle in Illinois in April of 2018 (the "Illinois Litigation").  The Illinois Litigation

---

[1] A copy of Plaintiff Pinnacle's Expert Disclosures is attached hereto as **Exhibit "A"** and Rob Wallace's Expert Report is attached hereto as **Exhibit "B"** in redacted form as it is designated highly confidential and is the subject of a forthcoming

[2] For purposes of this Motion only, Defendant Pinnacle will assume that Wallace will qualify as an expert.  Defendant reserves all rights to object to same.

was dismissed for lack of personal jurisdiction over Pinnacle (FL).  Thereafter, in November of 2018, Plaintiff Pinnacle filed the above styled lawsuit against Defendant Pinnacle.

Plaintiff Pinnacle Produced the Wallace Expert Report.

On June 25, 2019, Plaintiff Pinnacle produced an expert report of Rob Wallace ("Wallace") which, among other things described Mr. Wallace's qualifications, the scope of Wallace's potential testimony, and Wallace's conclusory opinions (the "Expert Report").[3]  As set forth below, the Expert Report includes conclusory opinions and lacks reliability.

## ARGUMENT AND MEMORANDUM OF LAW

Wallace's Report includes limited scholarship, but does not utilize it consistent with accepted methods and therefore lacks reliability.  Wallace reaches conclusions based on his purported experience to validate the Plaintiff Pinnacle's view of the facts and as set forth below his methods lack reliability.  Further, Wallace offers legal conclusion and cumulative opinions. To avoid confusing the fact finder, Wallace's opinions as set forth below should be excluded.

Among others, the Wallace Report offers the following opinions:

•    "The defendant's actions, including use of the word PINNACLE within its business name, branding, website, and other marketing, creates a strong likelihood that consumers would be confused into believing that the plaintiff and the defendant are the same company, related companies, or otherwise affiliated with each other." Expert Report at p. 5.

•    "Based on industry standards and best practices it is likely that the defendant was aware of the plaintiff's use of the PINNACLE mark before it adopted its name, or at a minimum, the

---

[3] A copy of the Expert Report is attached hereto as **Exhibit "A"** in redacted form and a motion t to seal pursuant to Local Rule 5.4 is being filed substantially contemporaneous.  Plaintiff Pinnacle's Expert Disclosures are attached hereto as **Exhibit "B."**

defendant should have known of such use because those industry standards and best practices would have called for clearing the new name in advance." Expert Report at p. 5.

•        "I contend that the defendant did in fact know of the existence of the plaintiff's original name, identity and trademark and they willfully infringed upon it with the intent of leveraging some of the plaintiff's positive recognition value and reputation. I conclude, based on this fact that it was the defendant's willful intent to infringe on the plaintiff's original trademark and identity." Expert Report at p. 25.

### I.        Legal Standard.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Fed. R. Evid. 702 codifies *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In *Daubert*, the Supreme Court addressed the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.* at 589. "The trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id* at 592; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004) (internal citation omitted) *quoting Daubert*, 509 U.S. at 595 ("The district court's role is especially significant since the expert's opinion 'can be both powerful and quite misleading

because of the difficulty in evaluating it.' Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case").

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-149 (1999), the Court extended *Daubert* to non-scientist experts.

The *Daubert* gatekeeping requirement is vital to a fair trial. As the Supreme Court framed it in *Kumho Tire*:

> [T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire Co.,* 526 U.S. at 152.

A trial judge has broad discretion in deciding *Daubert* issues. According to *Kumho Tire Co*., the trial judge has the discretion "both to avoid unnecessary reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire Co.*, 526 U.S. at 152. The Court noted that "the Rules seek to avoid 'unjustifiable expense and delay' as part of their search for 'truth' and the 'just determination' of proceedings." *Id.* at 152-153 *quoting* Fed. R. Evid. 102.

The Eleventh Circuit developed a rigorous three part test to determine whether to admit an expert report or opinion under *Daubert*.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (Rule 702 requires a "rigorous three-part inquiry").  The three parts are:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998). "Even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his expert opinion must be sufficiently reliable under *Daubert* and its progeny." *Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 10858370, at *3 (S.D. Fla. June 2, 2015).

The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005); see also *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999) ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence").

## II.    Wallace's Opinion Related to the likelihood of confusion and survey is unreliable and Will Not Assist the Trier of Fact.

"[U]nder Rule 702, the reliability criterion remains a discrete, independent, and important requirement for admissibility," and "[t[he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Frazier,* 387 F.3d at 1261 (citations omitted). The 11th Circuit considers the following when evaluating reliability: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Frazier,* 387 F.3d at 1262. Each stage of the expert's testimony must be reliable. *Id.* "Any step that renders the analysis unreliable renders the expert testimony inadmissible." *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 388 (5th Cir. 2009).

The Wallace Report employs the Squirt design to prepare its survey.  Wallace Report at p.
7.  While the Squirt Method is an accepted method, the Wallace Report reflects that it was not
accepted method in this circumstance nor was it executed properly.  Among other things:

- The Squirt design seeks to "replicate the purchase experience"  Wallace Report at 7;
  however, Wallace Report fails to replicate the actual purchasing experience of advertising
  services as experienced by the parties in the instant litigation who acknowledge they obtain
  clients primarily through referrals of customers, the media, and people in the industry.
  Deposition of Michael Magnusson, June 19, 2019 (with Exhibits), 49:6–49:18 (attached as
  Exhibit "H" to Defendant's Motion for Summary Judgment D.E. 116; Deposition of Pete
  Gary, July 2, 2019 (with Exhibits), 86:14–86:15.[4]  Instead, Wallace utilized images of the
  parties website because "It is possible, or even likely, for the potential client to have two
  internet browsers or tabs within a browser opened concurrently when "shopping" for a
  consultancy, and therefore they would see the defendant and the plaintiff's websites
  adjacent to one another during the engagement process." Expert Report at 7.  Further, the
  suggestion that this replicates the buying experience is particularly inappropriate given that
  neither party has a point of sale on their website.

- Further, by asking whether the parties are "affiliated" Wallace has provided a closed
  question which suggests an answer and the survey should be excluded.[5]  Specifically,

---

[4] While the deposition of Mr. Gary took place after the Wallace Report, the Magnusson occurred
beforehand and Wallace should have been familiar with how consumers obtain advertising
services.

[5] *"There is an advertising and marketing consultancy named Pinnacle Advertising and
Marketing Group, Inc. There is an advertising and marketing consultancy named Pinnacle
Advertising and Marketing Group, LLC. Do you believe that they are the same or affiliated
consultancies?*
*Closed ended responses were:*
*Yes, same or affiliated consultancies*

a survey question that "suggest[s] a connection" between the parties "instead of permitting participants to make their own associations ... begs its answer by suggesting a link between plaintiff and defendant" and "cannot be a true indicator of the likelihood of consumer confusion. *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 488 (5th Cir. 2004) (citation omitted) (rejecting survey that asked whether defendant is any way affiliated or associated with, sponsored or authorized by the plaintiff).

■ Additionally, the Squirt format is not appropriate here because the parties services are not generally offered side by side in the market place.  To utilize the Squirt format, the expert must demonstrate that there are "a significant number of real world situations in which both marks at issue are likely to be evaluated in close [physical or temporal] proximity or side-by-side," and that, if products are not found in close proximity to each other in the marketplace, the Squirt format should not be used.[6]  Additionally, generally accepted position in the community is that both marks existing on the internet does not support using the Squirt method.[7]  Accordingly, the side by side placement used in the survey is not reliable nor accepted within the scientific community as the parties services and marks at

---

*No, different consultancies*
*Don't know/ not sure"*

Wallace Report at p. 11.
[6] Jerre B. Swann, "Eveready and Squirt—Cognitively Updated," The Trademark Reporter, Vol. 106, No. 4 (July-August 2016), page 744; Jeffrey R. Cohen, "What U.S. Litigants Should Consider When Selecting a Survey Method," INTABulletin, Vol. 65, No. 3 (February 1, 2010); and Jerre B. Swann and R. Charles Henn Jr., "Likelihood of Confusion Surveys: The Ever-Constant Eveready Format; The Ever-Evolving Squirt Format," The Trademark Reporter, Vol. 109, No. 3 (May-June 2019), page 675.
[7] Jerre B. Swann and R. Charles Henn Jr., "Likelihood of Confusion Surveys: The Ever-Constant Eveready Format; The Ever-Evolving Squirt Format," The Trademark Reporter, Vol. 109, No. 3 (May-June 2019), page 679.

issue here are not generally side by side nor is Wallace opinion without support that it is "It is possible, or even likely, for the potential client to have two internet browsers or tabs within a browser opened concurrently when "shopping" for a consultancy, and therefore they would see the defendant and the plaintiff's websites adjacent to one another during the engagement process." Expert Report at 7.

- Wallace fails to provide information support the universe of survey participants he selected, "men and women respondents over the age of 18 who had been involved with hiring a consultancy within the recent past or would be responsible for hiring a consultancy based on their current job functions." Wallace Report at pp. 7 – 8. Among other things, Wallace does not identify the relevant geographic market nor does he state that he assessed either parties' current client base when determining the universe which is necessary for the survey to have validity. *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 441(N.D. Ill. 2006) ("The requirement that surveys be directed to the relevant group makes lists of actual or potential customers relevant"); Shari Seidman Diamond and Jerre B. Swann, Trademark and Deceptive Advertising Surveys: Law, Science, and Design, ABA Section of Intellectual Property Law, American Bar Association, 2012, page 31.

- Wallace use of Ogilvy & Mather ("Ogilvy") is an inappropriate control. Among other things, certain respondents recognized Ogilvy and were familiar with it. Expert Report of Rob Wallace, June 25, 2019, Pinnacle Final Data 6-10-19.xls. This is not surprising as Ogilvy was formed in 1948 (50 years before Plaintiff Pinnacle); has multiple locations globally (each Pinnacle only has one location); and Ogilvy has estimated 9 figure profits. The selection of such a well known brand as a control (and one who's name and characteristics does not share any qualities with either party) is an inappropriate control as

it fails to eliminate the noise in the survey, and exaggerates the results of the survey which renders it unreliable. It is appropriate to exclude surveys Daubert where they contain no controls or insufficient controls. *See, e.g., THOIP v. Walt Disney Co.,* 788 F. Supp. 2d 168, 178, 181 (S.D.N.Y. 2011) (improper control); *THOIP v. Walt Disney Co.,* 690 F. Supp. 2d 218, 240 (S.D.N.Y. 2010) ("[w]ithout a proper control, there is no benchmark for determining whether a likelihood of confusion estimate is significant or merely reflects flaws in the survey methodology"); *Louis Vuitton Malletier v. Dooney & Bourke,* 525 F. Supp. 2d 558, 595-96 (S.D.N.Y. 2007) (flawed control); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.,* 292 F. Supp. 2d 594, 601 (D.N.J. 2003)("Controls are an essential feature of reliable survey evidence...Surveys are not credible where they rely on vague or leading questions or fail to properly control for the effect of 'noise' such as preconceptions or bias") (citations omitted); *Major League,* 817 F. Supp. at 1122-23 ("both surveys contain a complete lack of controls rendering the data meaningless and having no evidentiary value").

Accordingly, since the survey utilizes an inappropriate method, asks closed questions, and fails to contain an appropriate control it is not reliable and should be excluded.  Further, as the survey does not follow the proper protocols nor reflect the buying experience of consumers of advertising products it would not assist the jury and has the risk of confusing them.

### III.    Wallace's Opinion Related to damages is cumulative.

"District courts have broad authority over the management of trials.  Part of this authority is the power to exclude cumulative testimony."  *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315

(11th Cir. 2005) (internal citation excluded) *citing* Fed. R. Evid. 403.[8]  Expert testimony is cumulative: 1) if it provides the same information offered by another expert; and 2) is offered by experts with substantially similar qualifications and experience. *See Tran*, 420 F.3d at 1315.

Wallace states that "defendant's infringement has also undoubtedly caused dilution of and damage to the plaintiff's brand."  Wallace Report at 24.  According to the Expert Disclosure and Plaintiff Pinnacle's Motion to extend time to file same [D.E. 62], Chad Porter and Susan Meyer were retained to determine damages.  Unlike Wallace, it appears Porter and Meyer were specifically retained by the Plaintiff Pinnacle to provide a damages opinion.  Therefore, Wallace's opinion on Plaintiff Pinnacle's alleged damages would be cumulative and would not assist the trier of fact.  Accordingly, Wallace's opinion on damages should be excluded.

### IV.  Wallace's Opinion Regarding Defendant Pinnacle's Duties and intent are unreliable and inadmissible legal opinions which should be excluded.

In the Wallace Report it provides:

•   "Based on industry standards and best practices it is likely that the defendant was aware of the plaintiff's use of the PINNACLE mark before it adopted its name, or at a minimum, the defendant should have known of such use because those industry standards and best practices would have called for clearing the new name in advance." Expert Report at p. 5.

•   "I contend that the defendant did in fact know of the existence of the plaintiff's original name, identity and trademark and they willfully infringed upon it with the intent of leveraging some of the plaintiff's positive recognition value and reputation. I conclude, based on this fact that it was the defendant's willful intent to infringe on the plaintiff's original trademark and identity." Expert Report at p. 25.

As to the first opinion, Wallace fails to provide support that there Defendant Pinnacle was required to follow "best practices" to clear a new name nor does Wallace fail to describe those best

---

[8] To the extent arguments contained herein should be presented in a motion in limine rather than a *Daubert* motion, Defendant Pinnacle requests that the Court treat this portion as a motion in limine.

practices.  Wallace fails to explain how a company in 2010 should check for registered trademarks which did not exist until 2017.  [D.E. 1-1; 1-2].  Accordingly, it should be excluded.  *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001) (expert's testimony properly excluded where "no scientific literature" supported proffered causation opinion). See also *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (district court reasonably concluded that the literature relied upon by plaintiffs' expert did not provide the necessary support to render his causation opinions admissible under *Daubert*). As part of this Court's gatekeeping function it should exclude expert opinion which is devoid of any support for its reliability.  *Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 10858370, at *3 (S.D. Fla. June 2, 2015) (emphasis added) ("The trial court's gatekeeping function requires more than simply '**taking the expert's word for it**.'") *quoting Frazier*, 387 F.3d at 1261).

Second, Wallace opinion on intent is a question for the fact finder, not an expert.  *U.S. v. Masat,* 896 F.2d 88, 93-94 (5th Cir 1990) (affirming exclusion of expert testimony on intent as "it primarily dealt with the issue of [defendant's] sincerity, something within the ability of the ordinary juror to determine"); *In re Trasylol Prods. Liability Litig.,* 2010 WL 4259332, *8-9 (S.D. Fla. 2010) ("question of intent or motive is a classic jury question and not one for experts" and excluding testimony "as to the knowledge, motivations, intent, state of mind or purposes of Bayer, its employees, or the FDA.  It is well settled that expert testimony is inadmissible if it contains a legal conclusion. *Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989); s*ee also Hann v. Balogh*, 920 So. 2d 1250, 1251-52 (Fla. 2d DCA 2006) ("This court has repeatedly held that opinion testimony as to the legal interpretation of Florida law is not a proper subject of expert testimony."). Therefore, Plaintiff requests that this Court exclude Wallace's opinions on the purported duties of the Defendant Pinnacle and its intent.

## CONCLUSION

Wallace's reports and opinions fail the requirements under Fed. R. Evid. 702 and *Daubert*. For the reasons stated above, Defendant Pinnacle respectfully requests that the Court grant the *Daubert* Motion concerning Rob Wallace's expert opinions and preclude the introduction of his opinions at trial as outlined above.

### GOOD FAITH CERTIFICATION IN COMPLIANCE WITH LOCAL RULES AND FED. R. CIV. P. 26

Counsel for the movant has conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

### CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this 6th day of August, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

Respectfully submitted,

**MARSHALL GRANT, PLLC**
*Counsel for Defendant*
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: 561.361.1000
Facsimile: 561.672.7581
Email: jgrant@marshallgrant.com
          tzeichman@marshallgrant.com

By: _____/s/ Thomas G. Zeichman_____
        JOE M. GRANT
        Florida Bar No. 137758
        THOMAS. G. ZEICHMAN
        Florida Bar No. 99239

## SERVICE LIST

**CASE NO. 9:18-cv-81606-DMM Notice will be electronically mailed to:**
Jason S. Toscano, Esquire and Jon M. Gibbs, Esquire on behalf of Plaintiff;
james.toscano@lowndes-law.com; jon.gibbs@lowndes-law.com;
carol.anderson@lowndes-law.com; litcontrol@lowndes-law.com;
carole.moore@lowndes-law.com; judith.sullivan@lowndes-law.com

Nicholas S. Lee, Esquire and Edward L. Bishop, Esquire on behalf of Plaintiff;
nlee@bdl-iplaw.com; ebishop@bdl-iplaw.com

Jennifer Mozwecz; jmozwecz@srmlaw.com