UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81606-CIV-MIDDLEBROOKS/REINHART

PINNACLE ADVERTISING AND
MARKETING GROUP, INC.,

    Plaintiff,

v.

PINNACLE ADVERTISING AND
MARKETING GROUP, LLC,

    Defendant.

## PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Following an appeal to the Eleventh Circuit and remand back to this Court, there is only one question that remains before final judgment can be entered in this case, whether injunctive relief is appropriate. The simple answer is yes, injunctive relief is appropriate. As outlined in more detail below, injunctive relief is appropriate and indeed necessary to protect the public in view of the inevitability that confusion will occur, as it has been occurring, if the parties continue to use the identical marks in the identical fields of business.

**I.    Background of Trial and Jury Verdict of Defendant's Violation**

Evidence in this case was presented over two days on September 30 and October 1, 2019 with closing arguments and jury deliberations occurring on October 2, 2019. Over the course of those two days, the jury learned that Pinnacle Illinois had been operating under the PINNACLE trademark for more than 20 years and had been operating in the State of Florida under the PINNACLE name since at least 1999. *See* Exhibit A, 9/30/2019 Trial Transcript,. at 75:11-76:11. The jury also heard that Pinnacle Florida incorporated in 2010 under the nearly identical name "Pinnacle Advertising and Marketing Group, LLC." *See* Exhibit B, 10/1/2019 Trial Transcript, at

1

47:4-6. Both parties introduced witnesses who testified as to the scope of their businesses and their use of the word "Pinnacle" and Pinnacle Florida even introduced an expert who opined on the perceived value of trademarks in the advertising and marketing field. Pinnacle Illinois also produced testimony regarding its efforts to promote its brand under the PINNACLE trademark (*e.g.*, Exhibit A at 78:11-79:3), its growth to a nationally recognized company that produces commercial to air during the Super Bowl (*id.* at 93:16-94:20) and the costs and harm inflicted upon its business as a result of Pinnacle Florida's infringement. (*id.* at 163:2-164:8; 167:24-168:18). At the conclusion of trial, the jury was properly instructed on how to determine liability and actual damages on Pinnacle Illinois' claims for trademark infringement and unfair competition under the Lanham Act, with Pinnacle Florida not objecting to those instructions or offering any proposed instruction that was not given. The jury then deliberated and found in Pinnacle Illinois' favor on liability.

In finding in Pinnacle Illinois' favor, the jury calculated and awarded monetary damages. However, the Court later found that Pinnacle Florida's laches defense barred monetary damages. *See* Dkt. 295. The Court did not find that the Jury's verdict was improper or unsupported by the evidence presented at trial. Nor did the Court's ruling on the post-trial motions overturn any of the Jury's findings. Thus, while the Court's ruling on the laches defense eliminated the monetary award, the Jury's determination of a violation of Pinnacle Illinois' rights as a registrant under the Lanham Act remains standing.

## II.     Standard for a Determining Injunctive Relief Under the Lanham Act

Section 1116 of the Lanham Act grants District Courts the power to grant injunctions "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of [15 U.S.C. § 1125]." 15 U.S.C.

§ 1116(a).  Here, Pinnacle Florida has been found to have violated Pinnacle Illinois' rights as a registrant and to have violated 15 U.S.C. § 1125(a).  *See* Dkt. 260 (Jury Verdict Form) at p. 1 (finding that Pinnacle Illinois owns a federal registration and that Pinnacle Florida caused a likelihood of confusion with that mark) and p. 3-4 (finding that Pinnacle Illinois has valid unregistered trademark rights that have been violated by Pinnacle Florida).

The general standard for evaluating injunctive relief for Lanham Act claims involves a showing of four elements: 1) that the plaintiff has suffered an irreparable injury; 2) remedies at law are inadequate; 3) the balance of hardships between the plaintiff and defendant favor injunctive relief; and 4) the public interest would be served by a permanent injunction.  *See Angel Flight, Inc. v. Angel Slight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  The particular status of this case, however, modifies that analysis slightly.

First, Pinnacle Florida has already been found liable of trademark infringement and unfair competition.  *See* Dkt. 260 (Jury Verdict Form) at p. 1 (finding that Pinnacle Illinois owns a federal registration and that Pinnacle Florida caused a likelihood of confusion with that mark) and p. 3-4 (finding that Pinnacle Illinois has valid unregistered trademark rights that have been violated by Pinnacle Florida).  As a result, Pinnacle Illinois is entitled to a rebuttable presumption of irreparable harm.  *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction . . .").

Second, in view of the Court's ruling on the laches defense: a) remedies at law have been denied and are thus wholly inadequate to remedy Pinnacle Florida's violations; and b) the balance of hardships between the plaintiff and defendant as well as the question of the public's interest are evaluated under an "inevitable confusion" standard. Under an inevitable confusion standard "the right of the public not to be confused may outweigh the inequity to the junior user of the trademark owner's delay in suing [and defeat a defense of laches."

If it is inevitable that a significant amount of confusion will probably be created by the junior user's actions, then the right of the public not to be confused and deceived may outweigh the inequity to the junior user of the trademark owner's delay in suing [and defeat a defense of laches]." 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.10.

### III.   Confusion is Inevitable

As noted above, the Jury was properly instructed on the elements necessary to determine whether Pinnacle Illinois owns registered trademark rights and has a protectable mark. *See* Dkt. 254 at pp. 18-24 (Jury Instructions regarding validity of trademarks). The Jury unanimously held that Pinnacle Illinois *does* have a valid federal registration and protectable rights. *See* Dkt. 260 (Jury Verdict) at p. 1, question 1 and p. 3, questions 1-3. The Jury was also properly instructed and asked to determine whether Pinnacle Florida's use of the PINNACLE mark created a likelihood of confusion with Pinnacle Illinois' valid and protectable rights. *See* Dkt. 254 at pp. 10-16, 25-28. The Jury again found unanimously in Pinnacle Illinois' favor and determined that Pinnacle Florida's actions created a likelihood of confusion with Pinnacle Illinois' registered and common law rights. *See* Dkt. 260, p. 1, question 2 and p. 4, question 4.

Pinnacle Florida did not object to the Jury Instructions. Likewise, the Court's later ruling on the laches defense does not change the Jury's findings of protectability and liability. *See* Dkt. 316 (Mandate from Eleventh Circuit Court of Appeals), Judgment of the Eleventh Circuit at p. 16-18 (discussing the Jury's instructions and findings on the issues of distinctiveness and protectability) and p. 20 (noting that the parties and the Court intended to give deference to the jury's findings on distinctiveness and protectability).

In fact, central to the Eleventh Circuit's analysis of the laches defense was a tacet concession that there is a likelihood of confusion in this case:

> The parties dispute when Pinnacle Illinois knew or should have known of its infringement and unfair competition claims against Pinnacle Florida. Lanham Act trademark infringement claims and unfair competition claims both center on the likelihood of confusion between the two marks. Thus, the relevant question here is when Pinnacle Illinois knew or should have known that there was a likelihood of confusion between the two marks.

*Id.* at pp. 26-27 of the Eleventh Circuit's Judgment (citations and footnote omitted).

Accordingly, it is well established that there is at least a likelihood of confusion stemming from Pinnacle Florida's use of the PINNACLE mark. The only question that remains is whether the likelihood of confusion rises to the level of inevitability, in which case Pinnacle Illinois' trademark infringement and unfair competition claims are said to be revived at least as to injunctive relief. *See e.g.*, *Coach House Rest., Inc. v. Coach & Six Rests, Inc.*, 934 F.2d 1551, 1564 (evaluating estoppel by the related defense of acquiescence and holding that "[I]f there is an inevitability of confusion, [a] petitioner's law suit may be revived from estoppel").

"The standard of confusion required for a finding of inevitability of confusion is an increment higher than that required for a finding of a likelihood of confusion." *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1334 n. 3 (11th Cir. 1996) (evaluating inevitable confusion under the related defense of acquiescence). In this case, however, the existence of actual

5

confusion has never seriously been contested. In other words, confusion is not just a likely or inevitable future possibility, but an actual past, present, and future reality.

In similar cases involving uses of the same mark in the same industry, courts throughout this Circuit have routinely issued permanent injunctions notwithstanding a successful laches defense. In the seminal case on the issue, *Kason*, the Eleventh Circuit clarified the interplay between a valid laches defense and a request for injunctive relief. In that case, the plaintiff brought claims for monetary and injunctive relief under 15 U.S.C. § 1125(a) and related state law claims. *Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1201 (11th Cir. 1997). At the summary judgment stage, the district court ruled in the defendants favor on its laches and statute of limitations defenses. *Id*. Regarding the injunctive relief, the district court held that estoppel by laches also barred an injunction unless the defendant has engaged in conscious infringement or fraudulent imitation. *Id.* at 1207. The Eleventh Circuit specifically overturned that holding:

> Generally, laches will not bar an injunction against an intentional infringer. But it is not correct to state that cases of intentional infringement are the *only* cases where injunctive relief might be appropriate despite a plaintiff's delay. Instead, the equitable nature of estoppel by laches must be foremost in the court's mind. Thus, if the likelihood of confusion is inevitable, or so strong as to outweigh the effect of the plaintiff's delay in bringing suit, a court may in its discretion grant injunctive relief, even in cases where a suit for damages is appropriately barred.

*Id.* (citing Restatement (Third) of Unfair Competition § 31, cmt. e (1995); *SunAmerica*, 77 F.3d at 1334; and *University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1044 (3d Cir.1982)).

The Eleventh Circuit's citation to and quotation of *University of Pittsburgh*, rightly notes that it is "the 'common situation' where a plaintiff's delay 'will bar its claim for an accounting for past infringement but not for prospective injunctive relief.'" *Id*.

Since *Kason*, courts have found that use of the identical mark creates inevitable confusion.

6

For example, in *Top Tobacco*, a court in the Northern District of Georgia analyzed related laches and acquiescence defenses and held that even if a material fact remained regarding acquiescence, the defense could not bar the requested injunctive relief because the defendant thought that the products it was selling were genuine. *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, No. 19-cv-4939-MLB, 2021 U.S. Dist. LEXIS 169673, at *36-37 (N.D. Ga. Sep. 7, 2021). The *Top Tobacco* Court reasoned that if the sophisticated defendant, with 14 years of experience in the business, was confused, then confusion in the marketplace is inevitable. *Id.*

In *Heron Dev. Corp. v. Vacation Tours, Inc.*, Magistrate Judge O'Sullivan recommended that a preliminary injunction be granted preventing the defendant from continuing to use internet domain names that were confusingly similar to the plaintiff's registered trademarks. Case No. 16-cv-20683-MORENO/O'SULLIVAN, 2017 U.S. Dist. LEXIS 57602 (S.D. Fla. April 13, 2017) (*adopted at* 2017 U.S. Dist. LEXIS 82145 (S.D. Fla. May 20, 2017)). In ruling that the injunction was proper, the *Heron Dev.* Court noted seven instances of actual confusion and noted that even if the defendant could establish an acquiescence defense, the evidence of actual confusion established inevitable confusion for purposes of an injunction. *Id.* at *17-20 and 28-29 ("Here, Plaintiff has provided several instances of *actual* consumer confusion, rather than just possible or likely confusion, which render Defendants' acquiescence defense inapplicable and support this Court's issuance of a preliminary injunction.").

A Court within this Southern District of Florida has also had the opportunity to consider less-salient prefixes or suffixes adjoined to otherwise identical marks. In *General Conf. Corp of Seventh-Day Adventists v. Perez*, the plaintiff's mark was "SEVENTH-DAY ADVENTIST." 97 F. Supp. 2d 1154, 1157 (S.D. Fla. 2000). The Court held "[t]he inclusion of Eternal Gospel Church in the title Eternal Gospel Church of Seventh Day Adventists does not reduce the danger of

7

potential confusion in light of the overwhelming similarity of the marks." *Id.* at 1157-58. In analyzing injunctive relief, the court held that any acquiescence or laches defense would be immaterial because "the evidence of Defendant's use of the Plaintiff's mark has and will cause inevitable confusion which can only be effectively avoided by the Court enjoining the Defendant's use of the Plaintiff's mark." *Id.* at 1163.

Like the defendant in *Top Tobacco*, sophisticated parties have been and continue to be confused between Pinnacle Illinois and Pinnacle Florida. In fact, the need to refer to the parties by the pseudonyms "Pinnacle Illinois" and "Pinnacle Florida" itself demonstrates the inherent and inevitable confusion between the parties. Pinnacle Florida, as the junior user, selected a name that is so identical to Pinnacle Illinois', and which incorporates Pinnacle Illinois' registered and common law protected marks, that constructs are necessary to even individually refer to the parties and discuss the level of confusion. Without these pseudonyms, even the parties and the Court (who have each spent years analyzing the difference between the two companies) would easily be confused when referring to one entity or the other.

Likewise, sophisticated clients of each party have been confused. As shown at trial, there has been ample evidence of actual instances of confusion, including errant job applicants, invoices that went to Pinnacle Florida related to Pinnacle Illinois' customers, invoices that went to Pinnacle Illinois related to Pinnacle Florida's customers, a current customer who thought an advertisement from Pinnacle Florida came from Pinnacle Illinois, a prospective customer who contacted Pinnacle Illinois believing it was located in Florida, and even industry media coverage that improperly linked to Pinnacle Florida's website when covering Pinnacle Illinois' prominent work on a Super Bowl commercial. More than being merely "probable" or even likely, as the jury found; the evidence showed that confusion is actually occurring and is occurring at virtually every stop in the

stream of commerce.

Even more compellingly, when testifying at trial, Pinnacle Florida's CEO was confronted with, and confirmed, his own deposition testimony stating that even sophisticated consumers would be confused between two competing companies operating under the name "Pinnacle":

Q And it's been your position and your attorney's position that clients are -- customers in this industry are sophisticated, right?

[Mr. Gary:] Yes.

Q And you agree with that?

A Yes.

Q But you testify that even though that clients are sophisticated, those who attend the trade shows would believe that Pinnacle Illinois, or Pinnacle Advertising and Marketing Group, Inc., is Pinnacle Advertising and Marketing Group, LLC, right?

A Can you repeat that?

Q Well, let me read it for you.

This was July 11, 2019, deposition transcript wherein the question was:

And based on the efforts – it starts on line 5 and says:

And based on the effort that Pinnacle Florida provides at those shows, people will recognize Pinnacle Illinois as Pinnacle Florida?

And you answer: Correct.

\*\*\*

Q So subsequent -- the following question starts on line 9:

Despite the fact that these people who attend the trade shows are sophisticated, right?

9

>   And you answer: That doesn't matter. All they are looking for -- all they are looking
>
>   at is Pinnacle Advertising.

Exhibit B, 156:20-157:2.

Indeed, all that any customers will see when interacting with either Pinnacle Illinois or Pinnacle Florida is Pinnacle Advertising, regardless of which entity they are dealing with. As such it would be near impossible for those customers to distinguish between the two entities and it is inevitable that confusion will occur.

Since trial, the muddy waters of confusion have not cleared. On July 26, 2020, Pinnacle Illinois received a resume submission from a prospective applicant that was relocating to Florida. *See* Exhibit C. While Pinnacle Illinois has clients in and does business in Florida, it does not currently have a business location in Florida and thus would not be interested in hiring an employee in Florida. The resume submission demonstrates that the state of mind of the applicant is one of confusion between the parties. In September of 2020, Pinnacle Illinois also noticed that a job listing for a copy writer had been erroneously linked to Pinnacle Illinois' corporate LinkedIn page. *See* Exhibit D. The job listing seeks an applicant to work in Boca Raton, FL (where Pinnacle Florida is located) and refers to a South Florida company founded in 2009 (as Pinnacle Florida describes itself). Again, the erroneous link to Pinnacle Illinois' corporate page demonstrates a state of mind of confusion by the Pinnacle Florida employee or LinkedIn agent who posted the job listing. Then, in December of 2020, invoices from Nielsen Media Research that were directed to Pinnacle Florida at its Boca Raton address were instead sent to Pinnacle Illinois demonstrating another state of mind of confusion. *See* Exhibit E.

Finally, and perhaps most problematically, Pinnacle Illinois has been confused with Pinnacle Florida relating to a pending breach of contract and debt collection action taken against

10

Pinnacle Florida. Sinclair Television Group, Inc. ("Sinclair") has sued Pinnacle Florida in the Florida Circuit Court for Palm Beach County for breach of contract resulting from $75,970.04 in unpaid bills. *See* Exhibit F (Complaint filed by Sinclair). Shortly after Sinclair filed its lawsuit against Pinnacle Florida, Pinnacle Illinois was contacted by debt negotiation firm seeking to assist Pinnacle Florida in that lawsuit. *See* Exhibit F (Affidavit of Michael Magnusson) at ¶¶3-6. Debt negotiation firms are generally sophisticated entities and can usually discern the differences between similarly named companies. The fact, that a debt negotiation firm seeking to assist Pinnacle Florida in the action brought by Sinclair contacted Pinnacle Illinois instead demonstrates a state of mind indicating that supports high degree of actual confusion.

Pinnacle Florida was also recently sued in Florida Circuit Court for eviction stemming from unpaid rent on its business lease. *See* Complaint attached as Exhibit G. While there is no indication, yet, that anyone has confused Pinnacle Illinois for Pinnacle Florida in connection with the eviction action, the existence of that action at the same time as the debt collection action brought by Sinclair indicates a high degree of risk that Pinnacle Illinois will be erroneously associated with a company with large outstanding debts. Obviously, actual confusion over unpaid debts demonstrates a concerning likelihood of current and ongoing harm. Debt collections affect credit ratings, Dun and Bradstreet reports, and are visible to prospective customers doing diligence before engaging an advertising and marketing firm. The above-described examples of actual confusion and the examples presented at trial are just a subset of the instances of actual confusion. Pinnacle Illinois may never know how many potential customers accidentally ended up dealing with Pinnacle Florida or how many current customers or members of the public continue to believe that Pinnacle Illinois and Pinnacle Florida are the same company and thus have had no need to call out their confusion. Likewise, more evidence of actual confusion is likely to have come through

Pinnacle Florida at least some of which was admittedly discarded. *See* Exhibit B, 10/1/2019 Trial Transcript, at 8:2-9 (Pinnacle Florida employee Stacey Elkes testifying that misdirected invoices are thrown out).

Absent injunctive relief, it is inevitable that such confusion will continue to the detriment of the public. The Court even noted the inevitability of future confusion at the pre-trial calendar call. At that hearing, on September 25, 2019, the Court called particular attention to the parties' emails and web addresses (which are, of course, related to their business names). The Court noted:

> THE COURT: Well, isn't it a problem for both of you? Apparently, your e-mail addresses are pinnacleadvertising.com and pinnacleadvertising.net, aren't they?
>
> [Pinnacle Florida's Counsel]: There's like a hyphen in their – the domain name. I know it's close.
>
> THE COURT: I mean, they're almost identical, it seems like.
>
> [Pinnacle Florida's Counsel]: There is both the similarity in domain names in terms of --
>
> THE COURT: Why do you want that situation to persist?
>
> [Pinnacle Florida's Counsel]: Because it's difficult to rebrand and pick a new name after you have invested as much as my client has in building the brand. When you spend years developing, and especially in the South Florida and across -- going to all these trade shows and dealer association meetings and promoting your brand, to then be forced to rebrand because you have the other side that knows you're in existence -- that's one of our defenses is latches. There's going to be evidence through testimony that comes out regarding how long they knew.
>
> They sat to it, and they did nothing to enforce even their common law trademark

12

rights. They waited to register the actual trademark, and, you know, our argument is that years went by. This isn't something that happened immediately.

Exhibit H, at 11:10-12:9.

Despite Pinnacle Florida's objections, the case law is clear. If confusion is inevitable, as it is here and seemed apparent to the Court before trial, there is cause to upset the status quo. "When inevitable confusion occurs in the marketplace due to unrestricted dual use of a trademark, the paramount value of the public interest demands some adjustment to the status quo." *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1337 (11th Cir. 1996). "The public interest in preventing confusion around the marketplace is paramount to any inequity caused the junior user." *General Conf. Cor. Of Seventh-Day Adventists v. Perez*, 97 F. Supp. 2d 1154, 1163 (S.D. Fla. 2000) (citing *SunAmerica*, 77 F.3d 1325, 1333).

It is also irrelevant that Pinnacle Florida uses minor alterations in its infringing uses of the registered PINNACLE mark and common law PINNACLE ADVERTISING AND MARKETING GROUP mark. That is, even though Pinnacle Florida uses the additional "Advertising and Marketing Group" beyond the registered PINNACLE mark and even though Pinnacle Florida is an LLC rather than a corporation like Pinnacle Illinois, Pinnacle Florida must still be enjoined from all uses of the PINNACLE mark to avoid confusion. *See General Conf. Corp. of Seventh-Day Adventists*, 97 F. Supp. 2d at 1157-58.

Beyond the evidence of actual confusion, Pinnacle Florida's own testimony that consumers faced with the competing uses of the PINNACLE mark would be confused, and the obvious concern about two companies using an identical name to compete in the same market, the factors traditionally evaluated in a likelihood of confusion analysis are also relevant to the question of inevitable confusion. *See Kason*, 120 F.3d at 1207. Because those factors weigh so heavily in

13

favor of finding confusion likely, they also support a finding that confusion is inevitable.

In the Eleventh Circuit, a seven-factor balancing analysis is used to determine whether there is a likelihood of confusion. The seven factors are:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public

*Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010). "These factors imply no mathematical precision, bur are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Custom Mfg. & Eng'g, Inc. v. Midway Servs.*, 508 F.3d 641, 650 (11th Cir. 2007). As noted above, the Jury has already found that there is at least a likelihood of confusion after being properly instructed on how to weigh the various factors. *See* Dkt. 254, pp. 10-15 and 25-28. As noted in Pinnacle Illinois' Opposition to Pinnacle Florida's Port-Trial Brief, ample evidence supports the Jury's Finding of a likelihood of confusion. *See* Dkt. 277, p. 8-15. Beyond being merely likely, however, that same evidence (incorporated herein by reference) demonstrates that confusion is inevitable.

Notably, Pinnacle Illinois presented ample evidence regarding each of the seven factors. The PINNACLE mark is strong (at least because of the presumption of inherent distinctiveness afforded to the registered mark). *See* Dkt. 277, p. 8-9 *see also* Dkt. 316 at Eleventh Circuit Judgment pp. 21-25 (discussing the presumption of inherent distinctiveness). Likewise, the marks being used by the parties are identical – a fact previously conceded by Pinnacle Florida. *See* Dkt. 221 (Summary Judgment Order) at p. 5-6 ("Further, it is undisputed that Defendant is using the

14

Pinnacle Mark, in connection with its advertising business, and Plaintiff has not consented to such use."). The parties also offer overlapping (*i.e.*, identical) services. *Id. see also* Dkt. 277, p. 10; Exhibit H (Pre-Trial Calendar Call) at 12:18-19 (Pinnacle Florida's counsel conceding that the services overlap). Both parties represent clients in the same industries (including the automotive industry), directly compete for clients, attend the same industry events/trade shows, and appear in the same industry publications – thus demonstrating similarity of sales channels, distributions, customers, and advertising media. *See* Dkt. 277, pp. 11-12. Pinnacle Illinois also presented evidence of the contradictory stories that Pinnacle Florida's CEO has given for the genesis of his company's name, which can support an inference of a bad faith intent when choosing the name. *Id.* at p. 12. Finally, as discussed *infra* and at Dkt. 277, pp. 12-15, there has been substantial evidence of actual confusion including errant job applicants, invoices that went to Pinnacle Florida related to Pinnacle Illinois' customers, invoices that went to Pinnacle Illinois related to Pinnacle Florida's customers, a current customer who thought an advertisement from Pinnacle Florida came from Pinnacle Illinois, a prospective customer who contacted Pinnacle Illinois believing it was located in Florida, and even industry media coverage that improperly linked to Pinnacle Florida's website when covering Pinnacle Illinois' prominent work on a Super Bowl commercial.

      If there were evidence supporting just some of the likelihood of confusion factors or if the potential confusion stemmed from competing marks that were similar though not identical or were being used in similar though not identical industries, then the confusion may stop at being merely likely. In this instance, however, there is evidence supporting each factor and, most importantly, the parties are using identical marks to directly compete in the same industry resulting in actual ongoing confusion. It is difficult to imagine an instance where confusion would be more inevitable.

## IV. Conclusion

As outlined above, confusion between the parties – Pinnacle Advertising and Marketing Group, Inc. and Pinnacle Advertising and Marketing Group, LLC – is not only a likely future event, it is an inescapable inevitability. In fact, actual real confusion has been occurring and continues to occur. Such confusion will continue unless and until the Court grants the requested injunctive relief.

/s/ James S. Toscano
James S. Toscano (Florida Bar No. 899909)
Jon M. Gibbs (Florida Bar No. 494534)
LOWNDES, DROSDICK, DOSTER,
KANTOR & REED, P.A.
215 North Eola Drive
Post Office Box 2809
Orlando, Florida 32802-2809
Telephone: (407) 843-4600
Facsimile: (407) 843-4444
james.toscano@lowndes-law.com
jon.gibbs@lowndes-law.com
carol.anderson@lowndes-law.com
litcontrol@lowndes-law.com
*Attorneys for Plaintiff Pinnacle Advertising and Marketing Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this September 9, 2019. Any other counsel of record will be served by electronic mail and/or first class mail.

/s/ James S. Toscano

0083151\182761\11504212v1