# EXHIBIT G

Filing # 127963898 E-Filed 06/02/2021 03:03:14 PM

IN THE COUNTY COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN
AND FOR PALM BEACH COUNTY,
FLORIDA

20 SE INVESTMENTS, LLC,
a Florida limited liability company,

                               Plaintiff,

v.

PINNACLE ADVERTISING, LLC, a Florida
limited liability company, and PINNACLE
ADVERTISING AND MARKETING
GROUP, LLC, a Florida limited liability
company,

                             Defendants.

CIVIL DIVISION -
CASE NO.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, 20 SE INVESTMENTS, LLC, a Florida limited liability

company, sues Defendants, **PINNACLE ADVERTISING, LLC, a Florida limited liability**

**company, and PINNACLE ADVERTISING AND MARKETING GROUP, LLC, a Florida**

**limited liability company**, for possession of the premises and breach of contract, as set forth

below and alleges as follows:

1. This is an action for eviction of tenants from commercial property located at **20 SE 3rd
Street, Boca Raton, Florida 33432** and the amount in controversy is less than $30,000.00.
Therefore it is within the jurisdiction of this Honorable Court, and the Plaintiff is entitled to
summary procedures in accordance with Florida Statutes Section 51.011.

2. Plaintiff, INVESTMENTS LIMITED, is authorized and registered to do business in Palm
Beach County, Florida.

3. Upon our information and belief, Defendants, **PINNACLE ADVERTISING, LLC, a
Florida limited liability company and PINNACLE ADVERTISING AND MARKETING
GROUP, LLC, a Florida limited liability company,** is authorized to do business in Palm
Beach County, Florida.

1

4.  Plaintiff is the owner of the real property located at **20 SE 3rd Street, Boca Raton, Florida 33432** (hereinafter referred to as the "Premises")**.**

5.  On or about **April 18, 2020**, Plaintiff's predecessor and Defendants entered into a Commercial Lease Agreement (hereinafter referred to as the "Lease") for the Premises. The term of the Lease was for a period of one year and two months (1) year and (2) months, beginning on May 1, 2020, and ending on July 31, 2021. A true and correct copy of the Lease is attached hereto and included herein as Plaintiff's Exhibit "A". Defendant, **PINNACLE ADVERTISING, LLC, a Florida limited liability company and PINNACLE ADVERTISING AND MARKETING GROUP, LLC, a Florida limited liability company,** personally guaranteed the Lease pursuant to a Guaranty of Lease executed on or about **April 2020**. The "Guaranty" is annexed as Exhibit "B."

6.  The Defendants are in possession of the Premises.

7.  Pursuant to the Lease, the Defendants are obligated to pay Plaintiff an aggregate of **$17,531.66** per month, which includes tax and additional rent.

## COUNT I - EVICTION

8.  Plaintiff reaffirms and realleges the allegations contained in paragraphs 1-9 and further states.

9.  The Defendants have failed and refuse to pay the full amount of rent due for the premises on a timely basis and owe the amount of **$60,019.67** for rent arrearages through the date hereof.

10. The Defendants' failure to pay the monthly payments in full as the same became due constitutes a material breach of the Lease between the parties.

11. On or about July 12, 2021, Defendants were mailed a copy of a Notice to Pay Rent or Deliver Possession by Plaintiff (hereinafter referred to as the "Notice"). The Notice contained a disclaimer which stated that it may not include amounts due for back rents. A true and correct copy of said Notice is attached hereto and included herein as Plaintiff's Exhibit "C".

12. Despite the demand therefore, Defendants have failed and refused to either pay Plaintiff or deliver possession of the premises pursuant to the Notice.

13. Rent is accruing during the pendency of this action and the Plaintiff is suing for all amounts due and unpaid by Defendants, including, but not limited to rent, late fees, interest, sales tax, common area maintenance charges and the like.

14. All conditions precedent to the filing of this action have been performed, waived, or otherwise satisfied.

NOT A CERTIFIED COPY

15. Plaintiff retained the undersigned counsel to protect its interest in the Premises and pursue the instant action.

16. The Plaintiff is obligated to pay attorney's fees in connection with this matter.

17. Pursuant to the Lease, Defendants are obligated to pay Plaintiff's reasonable attorney's fees in connection with this action.

18. Plaintiff is entitled to an award of costs pursuant to Fla. Stat. 83 et seq.

**WHEREFORE,** Plaintiff demands judgment against Defend___ __NACLE **ADVERTISING, LLC, a Florida limited liability** compa__ a__ **PINNACLE ADVERTISING AND MARKETING GROUP, LLC, a Flori'__ ___ned liability company,** for the possession of the real property as identified above, __su__ ___ of a Writ of Possession, reasonable attorney's fees, costs and any and all other __ __tr__er relief as this Honorable Court deems just and proper.

Dated this 4th day of June, 2021.

Respectfully Submitted,
Attorney for the Plaintiff

/s/ Jason M. Lazar
Jason M. Lazar, Esq.
FBN: 14489
215 N. Federal Highway
Boca Raton, FL 33432
Telephone: (561) 392-8920
Facsimile: (561) 392-3561
jlazar@investmentslimited.com

NOT A CERTIFIED COPY

EXHIBIT "A"

COMMERCIAL LEASE AGREEMENT

BETWEEN

INVESTMENTS LIMITED

AS AGENT FOR 20 SE INVESTMENTS, LC

AS LANDLORD

AND

PINNACLE ADVERTISING, LLC

AS TENANT

FOR COMMERCIAL SPACE LOCATED IN

BOCA RATON, FLORIDA

NOT A CERTIFIED COPY



COMMERCIAL LEASE AGREEMENT

THIS LEASE AGREEMENT (the "Lease") is made this 18th_day of April, 2020 (the "Effective Date"), by and between INVESTMENTS LIMITED as agent for 20 SE INVESTMENTS, LLC., a Florida limited liability company (the "Landlord"), and PINNACLE ADVERTISING, LLC., a Florida limited liability company (the "Tenant"),

1.       THE PROPERTY AND TERM.

A.       Initial Term. Landlord, for and in consideration of the rents hereinafter reserved      of the covenants, agreements and conditions hereinafter set forth, to be kept and performed on the part of      h, hereby leases to Tenant, and Tenant hereby rents and leases from Landlord the building known as a      lou      at *20 SE 3RD STREET, BOCA RATON FLORIDA 33432* deemed to be 6,464 rentable square feet i      ize      he "Building" or "Premises"), together with the parking areas, landscaping, walkways and other i      ts related to the Building (the "Outside Areas") (the foregoing, collectively referred to as the "Pro      as outlined on the site plans attached hereto and made a part hereof as Exhibit "A", subject to the ter      ind applicable rules and regulations, for a term to commence on the Commencement Date (defined bel      d end at midnight on July 31st, 2021, such period being the initial term of this Lease (the "Initial Term")      oses of this Lease, the term "Commencement Date" shall mean May 1st, 2020; however, Tenant a      sy contractors or work persons shall be permitted to access the Building to plan and advance any bui      enovation.

B.       Renewal Term. Provided this Lease shall      have been canceled pursuant to the other provisions of this Lease, and provided further that at the time      e      rcises its renewal option Tenant shall not then be in default of the Lease beyond any applicable notic      an      period, then Tenant shall have an option to renew the term of this Lease (a "Renewal Option") for a      ve renewal term of four (4) years (the "Renewal Term"), commencing on the date immediately follov      la      day of the Initial Term. To be effective, Tenant shall exercise its option for each Renewal Term by      to Landlord written notice of its intent to exercise its option to renew no less than six (6) months prio      ration of the Initial Term. Each Renewal Term shall be on the same terms as the Initial Term, except      Base Rent during the Renewal Term(s) shall be governed by Section 2B of this Lease.

If Tenant fails, or or      Landlord Notice of its election to renew this Lease upon the terms set forth herein and within the pr      e or if Tenant is in default of the Lease beyond applicable notice and cure periods at the time Tena      to exercise a Renewal Option, then it shall be deemed, without further notice and without further      that Tenant elected not to exercise the Renewal Option and the same shall be null and void and of      force or effect. Upon the request of either party, a writing memorializing the effectiveness of the Re      m shall be executed and delivered by the parties.

2.       MONT      T.

ase Rent within the Initial Term.

Commencing on the Rent Commencement Date (defined below), Tenant shall pay to Landlord, or to any successor thereto named by Landlord at the address described above or at such other place as Landlord may designate by Notice, annual rent at the rate set forth in this Section, without notice or demand and without deduction, abatement, counterclaim, or set-off whatsoever (the "Base Rent") payable in lawful money of the United States in equal monthly installments (each installment hereafter referred to as the "Monthly Rent") together with CAM Expense, as hereinafter defined, Sales Tax (defined below), and all other sums due hereunder from Tenant to Landlord, all of which are collectively referred to herein as "Rent".

The term "Rent Commencement Date" as defined in this Lease shall mean August 1st, 2020. The first Monthly Rent, CAM Expense, as hereinafter defined and Sales Tax installment payable thereon for the first month of the Initial Term shall be paid by Tenant to Landlord at the execution of this Lease. All subsequent Monthly Rents shall be due in advance on the first day of each calendar month during the Initial Term, beginning with the month next succeeding the First Month, as defined below, together with payment of the monthly installment of CAM Expense and Sales Tax.

The term "Lease Year", as used herein, (i) shall mean the twelve (12) month period \_\_\_\_ning with the Commencement Date, and each twelve (12) month period thereafter occurring during the Initial \_\_\_ of this Lease, and (ii) in the event this Lease expires or terminates on a date other than the date dete\_\_\_ pursuant to Paragraph 1 hereof, then the term "Lease Year" shall also mean the period from the end \_\_ the \_\_eding Lease Year to the date of said expiration or termination of this Lease. Should the term of this L\_\_se \_\_mence on a day other than the first day of a calendar month, then the Rent for such month shall be pr\_\_ a\_ \_\_ daily basis based upon the calendar month. Should any Lease Year contain less than twelve (12) cale\_\_\_\_\_ nonths, said annual Rent shall be prorated.

Tenant acknowledges that monthly installments of Rent a\_ \_ du\_ \_ payable on the first of each month, and that three percent (3%) late fee will be charged for all re\_ \_re\_ \_ d after the fifth (5th) day of the month, due and payable automatically as additional rent, without the\_ \_\_ of notice to Tenant of such charge. Tenant acknowledges that a fee equal to two percent (2%) of th\_ \_m\_ \_ of the check shall be charged on all returned checks, as an administrative fee, and shall be payable a\_ \_\_d\_ \_ \_rent. The Base Rent for the Initial Term of the Lease shall be controlled by Exhibit "B" of the Lease, \_ \_ \_\_ \_hereto and made part hereof.

B. Increases in Base Rent during Rene\_\_ T\_\_\_ ).

Provided Tenant exercises its Rene\_ \_O\_\_ \_ pursuant to Section 1B above, the Base Rent for the Renewal Term shall be controlled by Exhibit "B\_

3.     RENT ABATEMENT/ SERVICE \_\_ \_T\_

Notwithstanding any_____ \_e contrary set forth under Sections 2, 4, and Exhibit "B" of this Lease, the total Monthly Rent for \_\_ \_\_ \_ of May 2020, June 2020, and July 2020 shall be abated in its entirety (the "Rent Abatement"). In cor\_\_\_ \_\_on of the Rent Abatement, Tenant shall provide Landlord with a credit for marketing services to be pro\_\_u\_ \_enant in the amount of Twenty-Six Thousand Two hundred ninety-seven Dollars and Forty-eight C\_\_ \_\_ \_\_297.48) (the "Service Credit"). The Service Credit may be used by Landlord, or Landlord's designee\_ \_ \_\_e during the term of this Lease and may be used for any services provided by Tenant, including by \_\_ \_\_\_ed to advertising and marketing services. Tenant shall provide invoices for work performed by Te\_\_\_\_ \_\_pplied to the Service Credit.

4.     CA\_ \_\_ \_SE.

\_\_ommencing on the Rent Commencement Date, Tenant shall pay to Landlord as additional rent (i) Real Esta\_ Taxes, (ii) Insurance Expense, and (iii) the Cost of Operation and Maintenance (sometimes the foregoing collectively referred to as the "CAM Expense"). Landlord's estimated cost of the CAM Expense for the first Operational Year during which the first Lease Year occurs is estimated to be $9.06 per square foot, or $4,880.32 per month. Tenant is the sole tenant for the Building and the Property.

A.     Definitions. As used herein:

(i) "Outside Areas" shall mean all portions of the Property not intended as leasable area; including, but not limited to, the parking areas, shared roadways, loading areas, pedestrian walkways and ramps, landscaped areas, and other areas of the Property which are for the general use of tenants, their officers, agents, employees, servants, invitees, licensees, visitors, patrons, and customers.

(ii) "Cost of Operation and Maintenance" shall mean all costs and expenses incurred by Landlord in operating, repairing, maintaining and improving the Building, Property, and Outside Areas, as determined in accordance with generally accepted accounting principles consistently applied on ___ ___ h basis, including without limitation, all Improvements (defined below), equipment and systems whether ___ existing or hereafter constructed and including, without limitation, as they relate to the Building, Proper___, ___mon areas, (1) costs in providing rubbish and waste pickup and disposal, if any; (2) costs of providing ___ forms of security; (3) any management and administrative fees associated with the operation of the ___ ___ except that such management and administrative fees shall not exceed four percent (4%) of gross re___ ___ ___e Property; (4) costs of electricity, water, sewer, and other utility charges, but excluding any utility c' ___ ___ ___ directly by any tenant of the Building (including Tenant) to any utility provider; and (5) other misce___ ___s expenses associated with the maintenance and repair of the Building and the Property.

The Cost of Operations and Maintenance shall no___ ___ (1) the initial costs of equipment properly chargeable to a capital account using generally accepted ___ ___ ___g principles consistently applied or the original costs of constructing improvements on the Property ___ ___ cost of any capital addition, repair or replacement to the Property or the Premises (or reserves the___ ___ ___ expenses for which Landlord is or will be reimbursed by another source (excluding Tenant reimbu___ ___ ___ ___ common area expenses), including but not limited to repair or replacement of any item covered by ___ ___ ___, (4) expenses for the defense of Landlord's title to the Property; (5) structural repairs and replacement___ ___ ___ ___reciation and amortization of the improvements on the Property or Premises or financing costs, includ___ ___ ___st and principal amortization of debts; (7) charitable or political contributions; (8) costs of improving c___ ___ ___ ___g the Premises for the Tenant; (9) any amounts expended by Landlord to comply with any environme___ ___ la___ ___(10) costs to correct original or latent defects in the design, construction or equipment of the improv___ ___ ___ ___the Property or Premises; (11) any repair, rebuilding or other work necessitated by condemnation, fir___ ___no___ ___m or other insured casualty or hazard; (12) any expenses incurred (i) to comply with any government'___ ___ ___s and rules or any court order, decree or judgment including, without limitation, the Americans with ___ ___ ___ Act; or (ii) as a result of Landlord's alleged violation of or failure to comply with any governmer___ ___ ___ons and rules or any court order, decree or judgment; (13) leasing commissions, advertising e___ ___ses ___d other costs incurred in leasing or procuring new tenants; (14) rental on ground leases or other ___ ___ leases; (15) attorneys' fees, accounting fees and expenditures incurred in connection with tax ca___ ___ ___egotiations, disputes and claims of other tenants or occupants of the Property or with other third par___ ex___ ___ as specifically provided in the Lease; and (16) cost of the initial stock of tools and equipment for o___ ___ ___pair and maintenance of the Property; (17) Landlord's general corporate overhead and general and ___ ___ ___ve expenses, including costs incurred which relate to Landlord's business outside this Property, ('___ ___sts, penalties, fines, or awards and interest incurred as a result of or arising from the negligence, or willful miscon___ ___ct of Landlord or its agents, employees or contractors, (19) costs relating to any management office for ___ ___ ___ilding, (20) the cost to replace all HVAC hot and cold air production and distribution units and duct work; (21) the cost to install and replace all systems for fire suppression including sprinkler system, smoke evacuation, ventilation, telephone, electrical and other utility lines and (22) the cost to replace electrical and other utility lines and equipment located on the Premises and all HVAC, sprinkler, telephone, electrical and other utility or service lines.

Notwithstanding anything to the contrary set forth in this Section 4, any variances in Cost of Operation and Maintenance shall be limited to a maximum increase of three percent (3%) per annum. The Cost of

Tenant's Initials: ___
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

4

Operation and Maintenance are subject to increases only in the event of increases to non-controllable elements of the operating expenses budget. The non-controllable elements shall include real estate taxes, electric, water and sewer and any other utility charges, insurance rate increases due to general increases in the industry, and any line item that is directly affected by legislative changes. Landlord shall use reasonable efforts to minimize Cost of Operation and Maintenance in a manner consistent with good and generally accepted management practices. Landlord shall use commercially reasonable efforts to effect an equitable proration of bills for services rendered to the Building or to any other property owned by Landlord.

(iii) "Landlord's Statement" shall mean an instrument containing ~~~~~~~ reasonable computation of any CAM Expense due, itemized by expense category in reasonable detai~ ~~~~~~~ ~ to the provisions of this Section 4.

(iv) "Operational Year" shall mean a calendar year.

(v) "Property" shall mean the parcel of land situated in ~~~~~~~ ch County, Florida on which is situated a building commonly known as 20 SE 3rd Street, Boca R~ ~~ ~a 33432 and the Outside Areas.

(vi) "Taxes" or "Real Estate Taxes" shall m~~ ~~re~ estate taxes, assessments, special or otherwise, sewer rents, rates and charges, water rents, rates and ~~m~~ ~~ any other charge of a governmental authority of a similar or dissimilar nature, of any kind, which m~~ b~~ ~~~ied or assessed upon or with respect to the Property, and all taxes or charges levied on the Monthly Ren~ ~~ CAM Expense or the gross receipts from the Property which are in lieu of or a substitute for, any othe~~ ~o~ ~~ssment or charge upon or with respect to the Property. If assessments are paid in annual or other ins~~ ~~e~ ~~here shall be deemed included in Taxes for each Lease Year the annual installment or total number ~o~ ~~installments of such assessment becoming payable during such Lease Year, together with interest ~~ ~~le ~uring such Lease Year, on such installment and all installments thereafter becoming due as provi~~ ~~ ~~ ~, all as if such assessments had been so divided. Taxes shall not be deemed to include: (a) franchi~~ ~~ ~~~~ ~ar taxes of Landlord, or (b) income, excess profits or other taxes, if any, of Landlord, except to the ~~~~ ~~ ~ taxes are in lieu of or a substitute for any other tax, assessment or charge upon the Property which, ~~ ~~ o~~er tax, assessment or charge were in effect, would be payable by Tenant as provided above, in whi~~ ~~ ~~ch taxes shall be computed as if the Property were the only property of Landlord, and the rent here~~ ~~the ~nly income of Landlord. Notwithstanding anything contained herein to the contrary, Taxes shall not i~~ ~~ ~y Sales Tax payable by Tenant pursuant to any other provision of this Lease. Further, Taxes do not inc'~~ ~~~est, fines or other penalties due or payable by Landlord as a result of Landlord's failure to make payme~~ ~~ile any tax or informational returns when due. Landlord shall calculate Taxes on the basis of the ma~~~u~~ ~~count available for early payment, provided Tenant is not in default in the payment of Base Rent.

(vii) "Tax Year" shall mean the period of twelve (12) months commencing on January 1st of each ~ear or ~ ~n other 12-month period as may hereafter be duly adopted as the fiscal year from real estate tax purposes ~~ ~m Beach County or other applicable governmental authority.

    B.    <u>Real Estate Taxes</u>.

Tenant shall pay as CAM Expense a sum equal to the Taxes for each Tax Year during the term of this Lease for the Property. Subsequent to the issuance of the bill for Taxes, Tenant shall make monthly payments on account of the Taxes payable for the Tax Years during each Lease Year. Tenant shall pay one-twelfth (1/12) of the Taxes monthly in advance as CAM Expense, together with the payment of the Monthly

Tenant's Initials
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

5

Rent. Landlord agrees to regularly review Taxes for the Property and to contest or negotiate the amount thereof with the appropriate governmental or regulatory authority if Landlord determines, using commercially reasonable discretion, it is reasonably prudent to contest the Taxes. The cost of any such contest or negotiation shall be a Cost of Operation and Maintenance regardless of Landlord's success. In the event that Tenant has paid CAM Expense for such Taxes, an assessed valuation which had been utilized in computing the Taxes is reduced (as a result of settlement, final determination of legal proceedings or otherwise) and as a result thereof a refund of Taxes is received by or on behalf of Landlord, then, promptly after receipt of such refund, Landlord shall, at Landlord's option, (a) reimburse Tenant such refund or (b) apply to Tenant's future obligation to pay Taxes hereunder.

Any payment of CAM Expense or refunds due to Tenant hereunder for any period less than a full Tax Year, or any adjustment required due to Tenant hereunder for any period of less than a Tax Year, or any adjustment required due to the change in the area of the Property, shall be equitably prorated to reflect any such event.

C.   Building Insurance.

Tenant shall pay as CAM Expense during the term of this Lease Landlord's insurance premiums for, without limitation, property rental interruption, liability, casualty and any other types of commercially reasonable insurance carried by Landlord, the costs of which may include a reasonable and accurate allocation of a portion of the premium of a blanket insurance policy maintained by Landlord as well as a mark-up to account for any below market premium pricing made available to, and paid by, Landlord as a result of Landlord's self-insurance of the Property or under any blanket insurance policy maintained by Landlord. Landlord shall estimate (if such insurance is not paid in advance) the insurance referred to in this section and Tenant shall pay one-twelfth (1/12) thereof monthly in advance, together with the payment of the Monthly Rent.

D.   Operating Expenses.

Tenant shall pay to Landlord, as CAM Expense, the Costs of Operation and Maintenance for the Building, Outside Areas, and Property during each Operational Year. Prior to the end of each Operational Year, or as soon thereafter as practical, Landlord shall furnish Tenant by Notice a written statement, itemized in reasonable detail, of the estimated Cost of Operation and Maintenance for such year setting forth the Tenant's Projected Share of the Cost of Operation and Maintenance for the Building, Outside Areas, Building, and Property during such Operational Year and Tenant shall pay same to Landlord as CAM Expense. Tenant's Projected Share shall be divided by 12 and shall be payable on the first day of each month, beginning on the first day of such ensuing Operational Year. If such statement is furnished to Tenant after the commencement of such Operational Year, Tenant shall nonetheless be obligated to pay, as part of its next installment of Monthly Rent and CAM Expense, Tenant's Projected Share for the period which shall have elapsed prior to the first day of the calendar month next succeeding the calendar month in which said Statement is furnished to Tenant.

Prior to the Commencement Date, Landlord shall furnish to Tenant Landlord's reasonable approximation of the CAM Expense for the first Operational Year. At the beginning of each Operational Year, Landlord shall furnish to Tenant by written Notice, Landlord's Statement, itemizing in reasonable detail, the Real Estate Taxes, Insurance Expense, and the Cost of Operation and Maintenance for the Property for the preceding Operational Year. If the Landlord's Statement shall indicate that Tenant has overpaid, Landlord shall permit Tenant to credit the amount of such excess against the subsequent payment of Rent and CAM Expense due hereunder, or refund same if the term of the lease term is less than the overpayment. If Landlord's Statement shall indicate that Tenant has underpaid, Tenant shall forthwith pay Landlord such shortage within thirty (30) days

Tenant's Initials: 

P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

NOT A CERTIFIED COPY

after Tenant's receipt of such Notice.

      E.      <u>Apportionment of CAM Expense.</u>

      If the term of this Lease shall begin on a date other than January 1 or end on a date other than December 31st, any CAM Expense for the year in which the Rent Commencement Date or the date of expiration of the term shall occur, as the case may be, shall be apportioned in that percentage which the number of days in the period from the Rent Commencement Date to December 31ˢᵗ or from the Rent Commencement Date such Lease Year to such date of expiration, both inclusive, as the case may be, shall bear to the total number s in the calendar year in which such expiration occurs.

      F.      <u>Collection.</u>

      Except as otherwise provided herein, any CAM Expense payable pu      t    his Paragraph 4 shall be collectible by Landlord in the same manner as Monthly Rent, and Landlord       the same remedies for nonpayment thereof as Landlord has hereunder for nonpayment of Monthly R       he parties further agree that any monetary amounts due and owing to Landlord from Tenant pursuant to an   .se, promissory note or other agreement for the payment of money shall be deemed additional rent he   collectable as aforesaid.

      G.      <u>Sales Tax.</u>

      Tenant further agrees to pay, in addition to      in lieu of, the Monthly Rent, and the CAM Expense, any and all sales and use tax now or hereafter i   se   any governmental entity upon, applicable to, or measured by or on the Monthly Rent, and CAM Ex   e,    ny other charges payable to Landlord under this Lease ("Sales Tax"). Tenant shall pay to Landlord, c   y with each such payment of Monthly Rent, or CAM Expense or such other charges hereunder, the       t Sales Tax attributable to the payment being made to Landlord. If any Sales Tax is required to be pai    l  g   vernmental taxing authority directly by Landlord, whether during the term of this Lease or subseque       rmination of this Lease (if such Sales Tax is levied on the Monthly Rent, or CAM Expense paid by  e    en Landlord shall, upon demand, be fully reimbursed by Tenant for such payment.

      H.      <u>No Wa'</u>

      Any dela      of Landlord in computing or giving Tenant Notice of any adjustment in Base Rent or CAM Expense      onstitute a waiver of or in any way impair the continuing obligation of Tenant to pay such Base Rent,      or CAM Expense after receipt of notice thereof.

5.      <u>USE</u>.

      uring the term of this Lease, Tenant, its successors and assigns, shall use the Property exclusively for the pu      of operating a first-class, full-service advertising and marketing agency and other related legal uses (the "Use"). Tenant shall comply with all laws, ordinances, rules and regulations of applicable governmental authorities respecting the use, operation and activities of the Property, and Tenant shall not make, suffer or permit any unlawful, improper or offensive use of the Building, or any part thereof, or permit any nuisance thereon. Tenant shall not make any use of the Building which would make void or avoidable any policy of fire or extended coverage insurance covering the Property. Tenant shall use the Property only for the purpose stated in this Lease and shall not leave said Property vacant or suffer or permit any waste or mistreatment thereof. Tenant agrees to abide by any rules or regulations promulgated by Landlord, from time to time, including the

Tenant's Initials

NOT A CERTIFIED COPY

Rules and Regulations attached hereto as Exhibit "C" and made a part of this Lease.

Tenant shall throughout the term of this Lease (except any time when the Building is being remodeled, renovated, or have been rendered untreatable by fire or other casualty) or due to force majeure, continuously and uninterruptedly use, occupy and operate the Property for the conduct of the business specified in this Section 5. Tenant's failure to comply with the requirements set forth in this Section 5 shall be deemed a material default under this Lease.

6.      ACCEPTANCE OF PROPERTY/LANDLORD'S WARRANTIES.

Upon the Commencement Date of this Lease, Tenant shall take possession of the property, and such taking by Tenant shall be conclusive evidence that the Property was so taken in its "as-is, where-is" condition at the execution date of this Lease. Unless expressly stated herein to the contrary, Landlord has no obligation to repair, improve, or add to the Property subsequent to Tenant's taking possession thereof and Tenant shall, at its sole cost and expense and in compliance with the provisions of this Lease, be responsible for any changes, alterations, repairs, replacements, maintenance, and decorations to the Property. Neither Landlord nor Landlord's agents have made any representations or promises with respect to the physical condition of the Property, the rents, leases, expenses of operation, or any other matter or thing affecting or relating to the Property except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this Lease. Landlord represents and warrants to Tenant that it has not received any notice that the Building is currently in violation of any laws, regulations, or ordinances, nor are there any open or expired permits.

7.      TENANT'S CARE.

A.      Standard of Care. Tenant will, at Tenant's sole expense, take good care of the Property and the fixtures and appurtenances therein, reasonable wear and tear, and damage by fire, the elements, casualty, or Acts of God excepted, and will suffer no actively unreasonable active or emissive waste or injury thereof. Tenant shall, at Tenant's expense, but under the commercially reasonable direction of Landlord, promptly repair any injury or damage whether structural or nonstructural to the Building caused by the acts of Tenant, or its agents, invitees or employees, or Tenant's moving of or out of the Building. All the aforesaid repairs shall be of quality or class equal to the original work or construction, and shall be made in accordance with the provisions of Subparagraph 7B hereof. If Tenant fails after thirty (30) days' Notice thereof to proceed with due diligence to make the repairs required to be made by Tenant, the repairs may be made by Landlord, at the expense of Tenant. The expenses thereof incurred by Landlord shall be paid by Tenant to Landlord within thirty (30) days after rendition of a bill, or statement therefor. The foregoing reimbursement shall be deemed additional rent hereunder. There shall be no abatement of Rent or rent allowance to Tenant for diminution of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance or injury to business arising from Tenant making, or failing to make, any repairs, alterations, additions or improvements in or to any portion of the Building, or in or to fixtures, appurtenances or equipment thereof.

B.      Alterations. Tenant will not, without Landlord's prior written consent, which consent shall not be unreasonably withheld, make alterations, additions or improvements in or about the Property and will not do anything to or on the Property including the Outside Areas which will increase the risk of fire or the rate of fire insurance on the Property (such alterations, additions or improvements hereafter referred to as "Tenant Improvements"). It is expressly understood and agreed that Landlord is not requiring Tenant to make any improvements to the Property (except as may be expressly set forth in paragraph 31 below), and Landlord and Tenant agree that no improvements by Tenant shall be deemed "Improvements" within the meaning of the

Tenant's Initials: ____

Florida Construction Lien Law. All contractors, subcontractors, mechanics, laborers, material men, and others who perform any work, labor or services, or furnish any materials, or otherwise participate in the Tenant Improvement to the Property shall be and are hereby given notice that Tenant is not authorized to subject Landlord's interest in the Building or the Property to any claim for construction, mechanics, laborers' and material men's liens, and all persons dealing directly or indirectly with Tenant may not look to the Property as security for payment. Landlord has recorded a notice of the foregoing in the Public Records of Palm Beach County, Florida, pursuant to the provisions of Section 713.10, Florida Statutes. Tenant shall save Landlord harmless from and against all expenses, liens, claims or damages to either property or person which may or might arise by reason of the making of any such Tenant Improvements made by Tenant. Tenant shall with regard to all Tenant Improvements, comply with the building codes, regulations and laws now or hereafter to be made or enforced in the municipality and/or state which have jurisdiction over such work. All Tenant Improvements of a permanent nature or installed by Tenant to the Building shall become the property of Landlord at the expiration of this Lease unless Landlord, by Notice to Tenant given no later than twenty (20) days prior to the end of the Lease elects to relinquish its right thereto. In such event, Tenant may, at Tenant's sole discretion, remove the same at sole cost and expense and shall repair any damage to the Building caused by said removal.

As a condition to Landlord's consent to any Tenant Improvements, Tenant (i) shall submit to Landlord detailed plans and specifications (including layout, architectural, mechanical, structural and fire suppression system drawings) for each proposed alteration drawn in compliance with all applicable codes, ordinances and laws and shall not commence any such alteration without first obtaining Landlord's written approval of such plans and specifications, it being understood that Landlord's approval of such plans and specifications shall not be deemed a warranty or representation by Landlord that plans and specifications for such Tenant Improvements comply with applicable codes, ordinances or laws. Prior to commencing any work within the Property with respect to Tenant Improvements, Tenant shall, at its expense, obtain all permits, approvals and certificates required by any government or quasi-governmental bodies and ensure that all work is performed in strict accordance with the plans and specifications approved by Landlord, and (ii) shall furnish to Landlord evidence of insurance for worker's compensation (covering all persons to be employed by Tenant, and Tenant's contractors and subcontractors in connection with such construction) and comprehensive public liability (including property damage coverage) insurance in such form with such companies, for such periods and in such amounts as Landlord may reasonably require, naming Landlord and its agents as additional insured. Upon completion of such Tenant Improvements, Tenant, at Tenant's expense, shall obtain certificates of final approval of such alteration required by any governmental or quasi-governmental bodies, if applicable, and shall furnish Landlord with copies thereof. All alterations shall be constructed in a good, workmanlike manner and strictly conform to the plans and specifications approved by Landlord; in a quality that equals or exceeds the then current standard for the Building; all materials and equipment incorporated in the Property as a result of all alterations shall be new and first quality; and no such materials or equipment shall be subject to any lien, encumbrance, chattel mortgage or title retention or security agreement. Landlord, at its option, may require Tenant to remove any alterations installed by Tenant and/or repair any damage made by Tenant to the Property, at Tenant's sole cost and expense, if such Tenant Improvements were not pre-approved by Landlord in accordance with the provisions of this Subparagraph 7B; or (ii) the contractor performing such work was not approved of by Landlord in accordance with the provisions of Subparagraph 7D below; or (iii) the quality of workmanship and/or quality of materials utilized in connection with such work do not comply with the standards set forth in this Subparagraph B; or (iv) such work was not performed in strict accordance with the plans and specifications approved by Landlord. If Landlord elects to require that Tenant remove any such additions or repair any such alterations in accordance with this subparagraph, Tenant shall do so within thirty (30) days of the date Landlord gives Tenant Notice of Landlord's election. If Tenant fails to correct such matters with said thirty

(30) day period, Landlord may, but shall not be obligated to, remove such additions and/or repair such alterations

and Tenant shall reimburse Landlord for all costs therefor.

Tenant shall not, at any time prior to or during the Term, directly or indirectly employ, or permit the employment of, any contractor, mechanic or laborer in the Property, whether in connection with any alteration or otherwise, if such employment will unreasonably interfere or cause any material conflict with other contractors, mechanics, or laborers engaged in the construction, maintenance or operation of the Building or Property by Landlord, Tenant or others. In the event of any such unreasonable interference or material conflict, Tenant, upon demand of Landlord, shall cause all contractors, mechanics or laborers causing such interference or conflict to leave the Building or Property immediately. All alterations to which Landlord has consented shall be at Tenant's sole cost and expense, unless such alterations are Tenant Improvements for which an Improvement Allowance defined below shall be paid by Landlord.

C.    Removal of Personalty. No later than the last day of the Initial Term or Renewal Term, as applicable, Tenant will remove all of Tenant's personal property and repair all injury caused by or in connection with installation or removal of said property and surrender the Property (together with the Property) in good order and working condition, reasonable wear and tear and damage by fire, the elements, Acts of God, or casualty excepted. All property of Tenant remaining on the Property after expiration of the Initial Term or Renewal Term, as applicable, shall be deemed conclusively abandoned and may be disposed of by Landlord in anyway it deems fit, and Tenant shall reimburse Landlord for the cost thereof. The foregoing shall not in anyway limit the Landlord's obligations under this Lease.

D.    Approval of Contractors. In doing any work related to the installation of Tenant's furnishings, fixtures, or equipment in the Property or in making any Tenant Improvements pursuant to Subparagraph B above, Tenant will use only contractors or workmen approved by Landlord, which approval shall not be unreasonably withheld, conditioned or delayed. Tenant shall promptly remove any lien for material or labor claimed against the Property by such contractors or workmen if such claim should arise and hereby indemnifies and holds Landlord harmless from and against any and all costs, expenses or liabilities incurred by Landlord as a result of such liens filed by contractors or workmen retained by Tenant or its agents. If Tenant shall fail to cause such lien to be discharged as aforesaid, Tenant shall be deemed in default of this Lease, and in addition to any other right or remedy Landlord shall have, Landlord may, but shall not be obligated to, discharge the lien by paying the amount claimed to be due, or by procuring the discharge of such lien by deposit or bonding proceedings, and in such event Landlord shall also be entitled, if it so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of judgment in favor of the lienor with interest, costs and allowances as provided by law. Any amount so paid by Landlord with all costs and expenses incurred by Landlord in connection therewith, with interest thereon at the highest level rate for individuals from the respective date of Landlord's making of the payment or incurring of the costs and expenses, shall constitute additional rent payable by Tenant under this Lease, and shall be required to be paid by Tenant to Landlord within ten (10) days from demand therefor.

E.    Risk of Loss. Tenant agrees that all personal property brought into the Property by Tenant, its employees, licensees and invitees shall be at the sole risk of Tenant, and Landlord shall not be liable for theft thereof of money deposited therein or for any damages thereto; such theft or damage being the sole responsibility of Tenant, unless such theft or damage is caused by Landlord's gross negligence or intentional acts of Landlord or its agents, contractors, or employees.

F.    Operations by Tenant. In regard to the use and occupancy of the Property, Tenant will at its expense: (i) keep the inside and outside of all glass and other materials in the doors and windows of the Property clean; (ii) keep the Outside Areas, in a clean, orderly and sanitary condition, (iii) replace promptly any

Tenant's Initials: _____
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

10

cracked or broken glass or other materials in the doors and glass in the windows of the Property with glass or other materials, as the case may be, of like color, grade and quality and otherwise repair and/or replace any doors of the Property in need of repair or replacement; (iv) maintain the Property in a clean, orderly and sanitary condition and free of insects, rodents, vermin and other pests with regular daily janitorial and periodic pest control services; (vi) deposit garbage, trash, rubbish and refuse, on a daily basis in the designated receptacle; (vii) keep all mechanical apparatus including, without limitation, electrical and telephone systems in good working order and free of vibration and noise which may be transmitted beyond the Property; (ix) comply with all laws, ordinances, rules and regulations of governmental authorities and all reasonable recommendations of Landlord's casualty ____ ___er(s) and other applicable insurance rating organizations now or hereafter in effect; (x) keep on the Property and ____ _ntain in good working order one (1) or more commercial type dry chemical fire extinguisher(s) or ____ other fire suppression system as is required by applicable law and/or is specified in the plans for an ____ _ments to the Property approved by Landlord (collectively, the "Fire Extinguishers"); provided, how____ __ _t Landlord shall provide to Tenant all Fire Extinguishers or such fire suppression system necessary fo  T_____ _o comply with this subsection; and (xii) comply with and observe all Rules and Regulations attached _____ ___ made a part hereof;.

In regard to the use and occupancy of the Property, Tenant s____ ____ __se or permit the use of any objectionable advertising or sound medium such as, without limitation, lou____ ___ __ _s, phonographs, public address systems, sound amplifiers, reception of radio or television broadcasts, ___ ___ _ Building which is in any manner audible or visible outside of the Property (ii) permit undue accumula___ __ _ _rbage, trash, rubbish or other refuse within or without the Property; (iii) cause or permit objection___ __ts _n Landlord's commercially reasonable opinion) to emanate or to be dispelled from the Property; (__ __e__ _ or ship articles of any kind outside the designated loading areas for the Property, if any; (v) cond__ _ o__ _it to be conducted any auction, fictitious fire sale, going out of business sale, bankruptcy sale (unles_ _n __d by court order), or other similar type sale in or connected with the Property (but this provision shall n_ __ __ __t the absolute freedom of Tenant in determining its own selling practices, nor shall it preclude the co__ __ o_ _riodic seasonal, promotional or clearance sales); (vi) use or permit the use of any portion of the Pro__ __ _manner which will be in violation of law; (vii) place a load upon any floor which exceeds the floo_ __d _hi_h the floor was designed to carry; or (vii) intentionally use the Property for an__ ____ _ or illegal business, use or purpose.

G.    Signs and ___ ___g. Tenant shall install, at Tenant's expense, one (1) façade sign directly above the Premises. Su__ _gn_ _must be approved in writing by Landlord, which approval shall not be unreasonable withheld, condi____ __ _elayed, and permitted and installed by a qualified contractor. Tenant shall use its best efforts to com__ __he signage installation by no later than ninety (90) days after the Commencement Date of this Lease. Ad___ ____erior signs may be installed, but such signage must be approved in writing by Landlord, which app__o_ ___ not be unreasonable withheld, conditioned or delayed, and permitted and installed by a qualified con__ _____ __ will not place or suffer to be placed or maintained on the exterior of the Property, or any part of the ___ __sible from the exterior thereof, any other sign, banner, advertising matter or any other thing of any kind ___ __ng, without limitation, any hand-lettered advertising and any neon), and will not place or maintain any decora__ __, neon, letter or advertising matter on the glass of any window or door of the Property without first obtaining Landlord's approval. Tenant will, at its sole cost and expense, maintain such sign, banner, decoration, lettering, advertising matter or other thing as may be permitted hereunder in good condition and repair at all times.

H.    Electricity. Tenant shall immediately register the electric meters servicing the Property in Tenant's name with the appropriate utility company. Tenant shall make its own arrangements with the utility

company supplying electricity service. Commencing on the date hereof, Tenant shall pay for all electrical service and charges relating to the Property.

I.  Water. Tenant shall immediately register the water meter servicing the Property in Tenant's name with the appropriate utility company. Tenant shall make its own arrangements with the utility company supplying water service. Commencing on the date hereof, Tenant shall pay for all water service and charges relating to the Property.

8.  PROPERTY ACCESS.

Tenant and its employees and customers shall be permitted access to the Property _____ n (7) days a week, twenty-four (24) hours a day, subject to Landlord's reasonable security procedur___ __ Landlord will, absent an emergency, advise Tenant of twenty-four (24) hours in advance of implemen___ an ___

9.  SERVICES.

A.  Description of Services. Services to be provided ___ La___rd hereunder shall be subject to the Rules and Regulations of the Building established by the Landlo___

B.  Waiver of Liability. Landlord shall not ___ ___ab__ for any damages directly or indirectly resulting from, nor shall the Rent as herein set forth be abated___ ___ rea___ of (i) installation, use or interruption of use, of any equipment in connection with the furnishing of an___ ___ foregoing services, or (ii) failure to furnish, or delay in furnishing, any such services when such failu___ ___ela__ is caused by accident or any condition beyond the reasonable control of the Landlord or by the mak___ ___ec___sary repairs or improvements to the Building. The reasonable temporary failure to furnish any such se___ ___ not be construed as an eviction of Tenant or relieve Tenant from the duty of observing and perform___ ___ ___he provisions of this Lease.

C.  Tenant Expenses. ___ shall be responsible for all costs associated with the maintenance, repair, and replacement of the Tenan___ ___ments, Tenant's personal property, and the improvements or betterments and fixtures located wit___ ___remises and the cost to decorate or redecorate the Premises. If Tenant uses services in an amount or for ___ ___ excess of that provided for herein, then Landlord reserves the right to charge Tenant and Tenant sh___ ___lord as additional rent an amount equal to the actual costs incurred by Landlord in providing such ___ ___ices.

D.  ___'s Maintenance. Other than Tenant's expenses described in this Subparagraph 9C above, Landlord sh___ ___ cause to be kept the (i) foundation, exterior walls, structural components, and roof of the Building; ___ ___utside Areas in good order, repair and condition, unless any such work is necessary because of an___ ___ __ or intentional act of Tenant as described in Subparagraph 7A hereof, in which event the cost shall b___ ___ __ Tenant; (iii) the cost to repair, maintain and replace all HVAC hot and cold air production and distribution ___its and duct work; (iv) the cost to install, repair, maintain and replace all systems for fire suppressi___ __uding sprinkler system, smoke evacuation, ventilation, electrical and other utility lines and equipment l___ated on the Premises and all HVAC, sprinkler, telephone, electrical and other utility or service lines constructed by or on Tenant's behalf to connect the Premises to Tenant's HVAC hot and cold air production system and to the central locations for sprinkler, electrical, and other services. It shall be Tenant's sole responsibility to install, repair, replace and maintain all such systems within the Premises and all connections to Landlord's sprinkler, electrical, telephone, or other systems installed by or on behalf of Tenant whether located within or without the Premises. Should Tenant discover that any portion of the exterior of the Building or the Outside Areas require any repairs or maintenance as set forth in the preceding sentence, Tenant shall promptly

Tenant's Initials
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

12

give Notice to Landlord of such discovery. This Subparagraph 9D shall not apply to any damage caused by fire or other casualty or condemnation as described in this Lease, which events shall be controlled by Paragraphs 10 and 14 of this Lease.

10.   **DESTRUCTION OR DAMAGE TO THE PREMISES, TERMINATION AND WAIVER OF SUBROGATION.**

      A.   If the Building shall be partially or totally damaged or destroyed by fire or other casualty and if this Lease shall not be terminated as hereinafter provided in this Paragraph 10, then: (1) Landlord shall promptly and diligently repair the damage to and restore and rebuild the Building diligently and in a workmanlike manner after the collection of the insurance proceeds attributable to such damage, and (2) Tenant shall promptly and diligently repair the damage to and restore and repair the Tenant Improvements and Tenant's other improvements and betterments and Tenant's personal property diligently and in a workmanlike manner after the substantial completion of Landlord's repairs and restoration of the core and shell of the Building provided for in clause (1) above, provided that Tenant shall not have been given Notice by Landlord that this Lease has been terminated pursuant to the provisions of this Paragraph 10, or Tenant shall not have elected to exercise its right of termination of this Lease pursuant to this Paragraph 10. Such repair work by Tenant shall be deemed to constitute Tenant Improvements for the purposes hereof. Provided that this Lease shall not have been terminated by Landlord or Tenant, the proceeds of Tenant's policy providing coverage for Tenant Improvements shall be paid to Tenant.

      B.   If all or part of the Property shall be damaged or destroyed or rendered completely or partially untenable on account of fire or other casualty, Monthly Rent and CAM Expense shall be abated in the proportion that the untenable area of the Property bears to the total area of the Property, for the period from the date of the damage or destruction to (i) the date when the damage to the core and shell of the Building shall be fully repaired (to current code requirements) by Landlord, or (ii) if the Building so damaged or destroyed, the date on which access to the Building shall be available; provided, however, should Tenant or any of its subtenants reoccupy a portion of the Building for the conduct of business during the period the repair work is taking place prior to the date that access to the entire Building is available, Monthly Rent and CAM Expense shall be payable by Tenant from the date of such occupancy, reduced to the proportion that is being utilized by the Tenant. Tenant agrees to promptly and with the use of commercial efforts to restore the Tenant Improvements and Tenant's betterments and improvements to the Property so that Tenant's business may reopen as soon as possible.

      C.   If the Building shall be totally damaged or destroyed by fire or other casualty, or if the Building shall be so damaged or destroyed by fire or other casualty that repair or restoration requires more than nine (9) months, as estimated in any such case by a reputable contractor, registered architect or licensed professional engineer designated by Landlord or Tenant; or (ii) if the Building shall be totally damaged or destroyed during the last year of the term of this Lease, as same may have been extended, then in any such case Landlord may terminate this Lease by giving Tenant Notice to such effect ("Landlord's Casualty Termination Notice") as soon as practicable under the circumstances and in any event within ninety (90) days after the date of the casualty. It is hereby agreed and understood between Landlord and Tenant that in the event the Landlord decides to demolish all or any part of the Premises, the Tenant hereby agrees to vacating same upon receipt of sixty (60) days written notice, and the Landlord will return any security deposit and advance rental paid on account of this Lease, less any monies owed to Landlord.

      D.   In the case of any damage or destruction mentioned in this Paragraph 10, Tenant may terminate this Lease by Notice given to Landlord in accordance with the last sentence of this Subparagraph

10D(l) if there has been substantial damage or destruction to any portion or portions of the Building and Landlord shall not have completed the making of the required repairs and restored and rebuilt the Building, within six (6) months from the date of such damage or destruction (herein called the "Restoration Completion Date"), or within such period after such date as shall equal the aggregate period Landlord may have been delayed in doing so by reasons of Force Majeure, delays caused by Tenant, or delays which may be caused by reason of adjustment of Landlord's insurance policies; Except as expressly provided in this Subparagraph 10D, Tenant shall not be entitled to terminate this Lease and no damages, compensation or claim shall be payable by Landlord for inconvenience, loss of business or annoyance arising from any repair or restoration of any portion of the Building pursuant to this Paragraph 10. Landlord shall use all reasonable efforts to make such repair or restoration dilig____ ___d in a workmanlike manner and in such manner as to not, to the extent practicable, unreasonably inte___ ___th ___enant's use and occupancy of the Property; provided, however, that: (i) Landlord shall not be required ___ ___ h repair or restoration work on an overtime basis except to the extent that the cost of such overtime wo___ ___ould be covered by Landlord's insurance and (ii) upon Tenant's written request and agreement to bear ___ ___ ___ental additional cost of same, Landlord shall perform the repair and restoration of the core and shell ___ ___ b___ding on an overtime basis. In the event that Tenant becomes entitled to terminate this Lease and th___ ___ . estate hereby granted pursuant to the provisions of the first sentence of this Subparagraph 10D, Te___ ___ma___ do so by giving Notice to such effect to Landlord within thirty (30) days following the date on which ___en___ ___comes so entitled, and upon the giving of such Notice this Lease and the term and estate hereby gran___d ___ ___rminate as of the date set forth in such Notice, which shall not in any event be more than ninety (90) ___ ___ ___ the giving of such Notice, with the same force and effect as if such date were the expiration date spec___ ___ ___.

E. Each Party agrees to include in the ___ ___ ___licies insuring the Property any Landlord's improvements in the case of Landlord, and insuring Tena___ ___ro___ ___y, Tenant Improvements, and Tenant's other improvements and betterments in the case of Tenant, ___ ___t ___, damage or destruction by fire or other casualty, a waiver of the insurer's right of subrogation against ___ ___ ___arty during the term of this Lease or, if such waiver should be unobtainable or unenforceable, (i) an ___ ___greement that such policy shall not be invalidated if the insured waives the right of recovery against ___ ___ary___ ___sponsible for a casualty covered by the policy before the casualty or (ii) any other form of permis___ ___r ___e release of the other party. If such waiver, agreement or permission shall not be, or shall cease ___ ___e ___ ___nable from either party's then current insurance company, the insured party shall so notify the othe___ ___omptly after learning thereof, and shall use commercially reasonable efforts to obtain the same from a___ ___e___ ___.ance company meeting the requirements set forth herein. Each Party hereby releases the other Par___ ___spect to any claim (including a claim for negligence) which it might otherwise have against the o___ ___er p___ ___or loss, damage or destruction with respect to its property occurring during the term of this Lease to ___ ___ ___ which it is, or is required to be, insured under a policy or policies containing a waiver of subrogat___ ___mission to release liability, as provided in the preceding subdivisions of this Paragraph. Nothing ___ ___ta___ ___ in this subparagraph 10E shall be deemed to relieve either party of any duty imposed elsewhere in thi___ ___ea___ ___ repair, restore or rebuild or to nullify any abatement of rents provided for elsewhere in this Lease.

___. In the event (i) of a sale, transfer for value by the Landlord herein, or it successors or assigns, o___ ___ ___nterest in the Building and/or Property as described herein; or (ii) the Landlord herein, or its successors or assigns, intend to demolish the Building (the Building shall be deemed demolished for the purpose of this paragraph even though all or part of the foundation, or all or part of the steel structure, roof and exterior walls of the building shall remain), or decide to make a substantial alteration to the Building; or (iii) the Landlord or its successors or assigns shall sell or transfer the Building of which the Premises form a part, then in any of the aforesaid events (i) through (iii), the Landlord herein, its successors or assigns shall have the option to cancel this Lease and the term hereof by Notice to the Tenant at least one hundred eighty (180) days prior to the effective

Tenant's Initials: _____
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

14

date of such cancellation (the "Cancellation Date") and this Lease and the term hereof shall end and expire on the Cancellation Date set forth in such notice as if such date were the date originally set forth herein for the end or expiration of this Lease and the term hereunder.

11.    DEFAULT BY TENANT - LANDLORD'S REMEDIES.

A.    Events of Default; Remedies. The following shall constitute events of default: (i) Tenant's failure to pay any rent or additional rent on or before the fifth (5th) day after the same is due and payable; or (ii) Tenant's failure to observe or perform any item, covenant, or condition of this Lease on Tenant's part to be observed and performed (other than the covenant to pay any and all Rent) and Tenant shall not remedy such default within thirty (30) days after Tenant's receipt of Notice from Landlord to Tenant of such default identifying the default in adequate specificity and detail to properly inform Tenant of the matter at issue; or (iii) the entry against Tenant of a decree or order for relief in an involuntary case under the federal bankruptcy laws (as now or hereafter constituted) or any other applicable federal or state bankruptcy, insolvency or other similar law, or the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrate (or similar official) for Tenant or for any substantial part of Tenant's property, or an order for the winding-up or liquidation of Tenant's affairs; or (iv) the commencement by Tenant of a voluntary case under the federal bankruptcy laws as now constituted or hereafter amended) or any other applicable federal or state bankruptcy, insolvency or other similar law, or the consent by Tenant to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrate (or similar official) for Tenant or for any substantial part of Tenant's property, or the making by Tenant of any assignment for the benefit of creditors, or the failure of Tenant generally to pay its debts as such debts become due, or the taking of corporate action by Tenant in furtherance of any of the foregoing; or (v) levy upon or attachment under process against the Property or Tenant's effects or properties therein. Upon the occurrence of any event of default beyond applicable notice and cure period, Landlord, at its option, may, during continuance of such default, terminate this Lease. Upon such termination by Landlord, Tenant will at once surrender possession of the Property to Landlord and remove all of Tenant's effects therefrom, and Landlord may forthwith re-enter the Property and repossess the Property by any applicable action or procedure; and, subject to applicable law, remove all persons and effects therefrom.

B.    Right to Re-let. Landlord, on Tenant's behalf upon Tenant's default or breach of this Agreement, as set forth in Subparagraph A above, may re-let the Property at the price obtainable by reasonable effort, with advertisement, and by commercially reasonable private negotiations and for any term Landlord deems proper. If Landlord retakes possession of the Property for its own account or for the account of Tenant, Landlord shall exercise good faith in attempting to re-let the Property to mitigate damages. Tenant shall be liable to Landlord for the deficiency, if any, between the amount of all Rent "reserved" in this Lease and the Net Rent (defined below), if collected by Landlord in re-renting the Property. "Net Rent" is gross rents collected less all reasonable expenses of costs of whatsoever nature incurred by Landlord in releasing the Property, including, but not limited to, attorneys' fees incurred in retaking possession of the Property and/or negotiating a new lease for the Property, commissions with respect to the releasing of the Property only, rent concessions with respect to the Property only and the cost of renovating or remodeling the Property. The term "reserved" as applied to Rent shall mean any and all payments to which Landlord is entitled hereunder during the entire term (Initial Term or Renewal Term if renewed, as the case may be) of this Lease.

C.    Costs. In the event Landlord elects to terminate this Lease as hereinabove provided and Tenant does not pay the accelerated rent pursuant to Subparagraph 11D below, Landlord may, in addition to other remedies it may have, recover from Tenant all damages Landlord may incur by reason of such default, including the cost of recovering the Property, reasonable attorneys' fees to the prevailing party, together with the unamortized (amortized over the Initial Term of this Lease on a straight line basis and determined as of the first

Tenant's Initials: _____
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

15

date on which Rent was due but not paid) portion of a of leasing commissions, and any other cash concession in connection with this Lease (which shall be amortized over the Initial Term of this Lease), all of which amounts shall be immediately due and payable from Tenant to Landlord.

       D.    <u>Acceleration of Rent.</u> Upon Tenant's default and the termination of this Lease as aforesaid, all Monthly Rent, all CAM Expense (based upon Tenant's historical predominance) and any other charges and assessments against Tenant due or to become due under this Lease during the Initial Term or the Renewal Term, if renewed, as if the same had not been terminated, shall immediately become due and payable.

       E.    <u>Remedies Non-Exclusive.</u> Pursuit of any of the foregoing remedies s̶̶ of preclude pursuit of any of the other remedies herein provided or any other remedies provided by la̶ w̶ . at law or in equity.

       F.    <u>Right to Cure Default.</u> All agreements, covenants, conditions ̶ ̶ovisions to be performed or observed by Tenant under this Lease shall be at its sole cost and expense a̶ ̶ ). any abatement of Rent, except as otherwise specifically provided herein. If Tenant shall fail to pa̶ ̶ ̶m of money other than Rent, required to be paid by it hereunder or shall fail to perform any other ac̶ ̶it ̶ ̶t to be performed hereunder, Landlord may, after providing the required notice and after expiration ̶ he ̶̶licable cure period, but shall not be obligated so to do, and without waiving or releasing Tenant fr̶̶ ̶ ̶ligations of Tenant, make any such payment or perform any such other act on Tenant's part to be ma̶ ̶ ̶ p̶ formed hereunder. All sums so paid by Landlord and all necessary incidental costs shall be deeme̶̶ ̶̶ttⁱ ̶ ̶ rent hereunder and shall be payable to Landlord within ten (10) days of Landlord's Notice de̶̶ ̶ ̶ ̶yment, together with interest thereon at the maximum rate of interest permitted to be contracted for ̶y ̶ ̶ ̶le̶le law.

12.    <u>LANDLORD'S LIABILITY.</u>

       The term "Landlord" as use ̶in ̶ ̶ease shall mean only the owner or mortgagee in possession for the time being of the Building or the c̶ ̶ ̶a̶̶asehold interest in the Building or the land directly hereunder so that in the event of sale of said Bu̶i̶ ̶ng ̶̶̶asehold interest or an assignment of this Lease, upon Notice to Tenant of such transfer and writter ̶ ̶ ̶n by such successor in writing of all obligations arising subsequent to such transfer, the selling or ass̶ ̶ing ̶dlord shall be and is hereby entirely freed and relieved of all obligations of Landlord subsequently ac̶ ̶ ̶pt for uncured Landlord defaults which exist on the date of transfer and Landlord's indemnificatio̶ ̶ligat̶ ̶s hereunder which relate to matters arising during that part of the term of this Lease during which La̶ ̶ ̶ ̶ed the Building, for which Landlord shall continue to be liable notwithstanding the transfer of its inte̶ ̶ ̶Building or Property. It is specifically understood and agreed that there shall be no personal liability ̶ ̶ ̶ ̶d in respect of any covenant, condition or provisions of this Lease; in the event of a breach or defa̶ ̶y ̶dlord or any of its obligations under this Lease, Tenant shall look solely to Landlord's right, title a̶ ̶in ̶ ̶n the Building, including, but not limited to the sale proceeds therefrom, insurance proceeds, condem̶̶ ̶eeds, rent proceeds and insurance proceeds maintained by Landlord as provided herein with respect ̶ ̶ ̶rd's contractual indemnity obligations contained herein, for the satisfaction of Tenant's remedies.

13.    <u>ASSIGNMENT AND SUBLETTING.</u>

       Tenant shall not, without the prior written consent of Landlord, which said consent shall not be unreasonably withheld, conditioned or delayed, assign this Lease or any interest hereunder, or sublet the Property or any part thereof, or permit the use of the Property by any party other than Tenant. Any assignment, subletting, or change of tenancy is subject to a payment to Landlord of a change of tenancy fee equal to One Thousand Five

NOT CERTIFIED COPY

Hundred Dollars and Zero Cents ($1,500.00), payable at the time of Landlord's consent to such assignment. As used herein the term "subtenant" shall include any assignee of the Lease or any interest therein. Tenant shall submit to Landlord a written request for the consent of the Landlord to such assignment or subletting which request shall be accompanied by the name of the subtenant, a copy of the fully executed sublease which sublease shall be solely conditioned upon Landlord's consent thereof; the nature and character of the business of the proposed subtenant, the proposed use of the Property, current financial information on the subtenant, and such additional information as Landlord may reasonably request. Consent by Landlord to one assignment or sublease shall not constitute a waiver of the requirement for Landlord's consent in the future, and all later assignments and subleases shall likewise be made only upon the prior written consent of Landlord. Subtenants or assignees shall become liable directly to Landlord for all obligations of Tenant hereunder without, however relieving Tenant of its liability this Lease.

Tenant agrees that the instrument by which any assignment or subletting is to by Landlord is accomplished shall expressly provide that the assignee or subtenant will perform all (in the case of an assignee) or to that portion applicable to part of the Property being sublet of a subtenant) the agreements, covenants, conditions and provisions to be performed and observe under this Lease as and when performance and observance is due and that Landlord shall have enforce such agreements, covenants, conditions and provisions directly against such assignee or subtenant unless excused in writing by the Landlord, Tenant shall in all cases remain primarily responsible for the performance by any subtenant or assignee of all such agreements, covenants, conditions and provisions. Any assignment or subletting without an instrument containing the foregoing provision shall be void and shall, at the option of the Landlord, constitute a default hereunder entitling Landlord, among its remedies, to terminate the Lease.

Unless excused in writing by the Landlord which shall not be unreasonably withheld, any subtenant's use of such space shall be in conformance the terms of this Lease including, without limitation, the use requirements and prohibitions contained Additionally, Tenant shall not sublease any of such space to any subtenant who is or might become engaged in activity which does or could, in the opinion of Landlord, generate excessive flow of customers or invitees from such space.

Tenant shall give Landlord Notice of its desire and intention to sublease all or some portion of such space not less than thirty (30) days prior to the commencement of the term of any sublease, and shall, at the same time, furnish Landlord the items required by the first paragraph of this Paragraph 13, and Landlord shall have fifteen (15) days following the receipt of such Notice and items within which to give Notice to Tenant of its consent to such sublease. Failure Landlord to timely advise of its objection to such proposed sublease, shall be deemed to be a rejection of such sublease.

The following are additional conditions and restrictions upon assignment or subletting by Tenant:

A.      Any sublease shall be expressly subject and subordinate to all of the terms and provisions of the Lease;

B.      Tenant agrees not to list or otherwise publicly advertise the Property for assignment or subletting at a rental rate less than (a) the rate of the Rent then payable hereunder for the Property or (b) the rate at which Landlord is then offering comparable space in the Building (and Landlord agrees; upon written request from Tenant, to advise Tenant of such rate), whichever is lower, but may negotiate a lesser rate;

C.      Tenant agrees not to offer to assign nor sublet to a party which is already a tenant of the Building or Property or to a subsidiary, an affiliate, or a parent of a tenant of the Building or Property;

NOT A CERTIFIED COPY

D.     If Tenant shall sublet or assign all or a portion of the Property for a rental in excess of the total Rent stipulated herein, which is or may become due and owing, then Tenant shall pay to Landlord as additional rent all of such excess amount and such excess amount shall be applied to the Tenant's obligation under this Lease. In addition, Tenant shall also pay to Landlord, as additional rent, all other profit, gain, or consideration realized by Tenant in connection with the subletting or assignment and such excess amount shall be applied to the Tenant's obligations under this Lease. Profit, gain or consideration resulting from the sale of the Tenant or Tenant's business shall not be deemed to be additional rent;

E.     Such subletting or assignment shall not cause Landlord any cost, and if [ ]ord incurs any cost whatsoever, then Tenant agrees to pay the same as additional rent;

F.     Tenant shall not sublease or assign any portion of the Property [ ] [ ]ty if such sublease or assignment would violate the exclusivity clause contained in any lease affectin[ ] [ ]on of the Property;

G.     With respect to subletting less than all the Propert[ ] [ ]t its sole cost and expense, shall provide and permit reasonable means of ingress to and egress from [ ] [ ]e sublet by Tenant; and

H.     If Landlord consents to an assignment of [ ] [ ] or a sublease of the Property, Tenant shall not be released from its obligations under this Lease but [ ] [ ]in primarily liable for all sums payable under this Lease. In the event of an assignment or a sublease, [ ] [ ]o have the right to assign its security deposit to the assignee or subtenant.

I.     If Tenant is a corporation, or if [ ] is a general or limited partnership or limited liability company having a corporation as a general partne[ ] [ ]ng member, then a sale, assignment, transfer, exchange or other disposition of stock in such corporatio[ ] [ ]ger, consolidation or other combination of such operation, shall be deemed an assignment which is su[ ] [ ]e provisions of this Paragraph 13. If Tenant is a general or limited partnership or a limited liability [ ] [ ]hen the sale, assignment, transfer, exchange or other disposition of a general partner or managing me[ ] [ ]est in the Tenant, the substitution of a general partner or managing member in the Tenant, the additi[ ] [ ]ral partner or managing member in the Tenant, or the transfer of a of the partners' interests in the pa[ ] [ ] or the members' interests in the limited liability company shall be deemed an assignment which is sub[ ] [ ]provisions of this Paragraph 13. For purposes of this Lease, a joint venture shall be deemed to be a p[ ] [ ]p and a joint venturer a partner.

J.     [ ] [ ]ant's interest in this Lease is assigned or if the Property or any part thereof are sublet to, or occupied [ ] [ ]by, anyone other than Tenant, whether in violation of this Paragraph 13 or not, Landlord may, after de[ ] [ ]nant, accept from any assignee, subtenant or anyone who claims a right to the interest of Tenant un[ ] [ ]ase or who occupies any part or the whole of the Property the payment of Rent and/or the performance o[ ] [ ]y of the other obligations of Tenant under this Lease, but such acceptance shall not be deemed to be a w[ ] [ ]oy Landlord of the breach by Tenant of the provisions of this Paragraph 13, nor a recognition by Landlord that any such assignee, subtenant, claimant or occupant has succeeded to the rights of Tenant hereunder; nor a release by Landlord of Tenant from further performance by Tenant of the covenants on Tenant's part to be performed under this Lease; provided, however, that the net amount of rent collected from any such assignee, subtenant, claimant or occupant shall be applied by Landlord to the Rent to be paid hereunder.

K.     Permitted Transfers. Provided the assignment does not have a negative impact on the

Tenant's Initials:

fulfilment of this Lease and provided that the new third party owner enters into this Lease, Landlord shall not unreasonably withhold its consent to an assignment of this Lease by Tenant (by merger, consolidation or otherwise) an entity simultaneously acquiring a controlling interest in Tenant's ownership interests or all or substantially all of Tenant's assets, including, without limitation, the entire chain of businesses conducted under the trade name herein set forth, provided that: (1) Tenant shall not at the time of such assignment be in default under any of the terms, covenants and conditions of this Lease beyond any applicable grace or cure period provided by this Lease, (2) such assignee (and any person or entity acquiring a controlling interest in Tenant's ownership interests) shall agree in writing to perform all of the unperformed terms, covenants and conditions of this Lease (whether acc____ing prior to, on, or after the effective date of the assignment), (3) Tenant shall agree in writing to at all times ____ ____imarily obligated for the performance of the terms, covenants and conditions of this Lease, (4) no later ____ ____(30) days prior to the effective date of the assignment, Tenant shall have supplied Landlord with a____ ba____ information reasonably required by Landlord to establish that all of the foregoing conditions have b____ s____fied. In the event of an assignment of this Lease by virtue of a transfer of Tenant's ownership interest____ ____ ____ence of a merger, then the use of the term "assignee" shall refer to Tenant as Tenant shall exist on th____ ____owing the date of the transfer.

14.   CONDEMNATION.

A.   If the whole of the Property shall be take____ b____ ____nation or in any other manner for any public or quasi-public use or purposes, this Lease and the ter____ ____ate hereby granted shall terminate as of the date of vesting of title on such taking (herein called "Dat____ ____king"), and the Rent shall be prorated and adjusted as of such date.

B.   If any part of the Property ____ ____an the whole shall be so taken, this Lease shall be unaffected by such taking, except that (a) if ten per____ (1____) or more of the structural portion of the Building shall be so taken, Landlord may, at its option, termi____ ____ease by giving Tenant Notice to that effect within ninety (90) days after the Date of the Taking, and ____ ____t____ percent (10%) or more of the Floor Area of the Building shall be so taken and the remaining part of the ____ ____all not be reasonably sufficient for Tenant to continue feasible operation of its business, Tenant may ____ ____ this Lease by giving Landlord Notice to that effect within ninety (90) days after the Date of the Tak____ ____ Tenant's option, the Rent may be reduced by ten (10%). This Lease shall terminate on the date spec____ ____ ____ Notice from Landlord or Tenant to the other, provided that such date shall be not less than ninety (____ ____ ____ter the giving of such Notice, and the Rent shall be prorated and adjusted as of such termination da____ ____ ____vent the Lease is not terminated as aforesaid, upon such partial taking, the monthly Rent shall be ____ ____ ____orated and adjusted.

C.   ____ ____dlord shall be entitled to receive the entire award or payment in connection with any taking without ____ ____ there from for any estate vested in Tenant by this Lease or any value attributable to the unexpired ____ ____ ____ne term of this Lease and Tenant shall receive no part of such award except as hereinafter expressly pr____ ____ in this Subparagraph 14C. Tenant hereby expressly assigns to Landlord all of its right, title and interest ____ ____ ____ every such award or payment and waives any right to the value of the unexpired portion of the term of this ____ease; provided, however, Tenant may make a separate claim against the condemning authority for the value of Tenant's property lost, and moving expenses incurred, by reason of such taking, provided Landlord's award is not reduced thereby.

D.   If the temporary use or occupancy of all or any part of the Property shall be taken by condemnation or in any other manner for any public or quasi-public use or purpose during the term of this Lease, Tenant shall be entitled, except as hereinafter set forth, to receive that portion of the award or payment for such taking which represents compensation for the use and occupancy of the Property, for the taking of Tenant's

Tenant's Initials: ____
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

19

property, for moving expenses, and that portion, if any, which represents reimbursement for the cost of restoration of the Property. This Lease shall be and remain unaffected by such taking and Tenant shall continue to be responsible for all of its obligations hereunder insofar as such obligations are not affected by such taking and shall continue to paying full the Base Rent and CAM Expense when due. If the period of temporary use or occupancy shall extend beyond the expiration date of this Lease, that part of the award which represents compensation for the use and occupancy of the Property (or a part thereof) shall be divided between Landlord and Tenant so that Tenant shall receive so much thereof as represents the period up to and including such expiration date and Landlord shall receive so much thereof as represents the period after such expiration date.

E. In the event of a taking of less than the whole of the Property which ~~~~ result in termination of this Lease, or in the event of a taking for a temporary use or occupancy ~~~~ part of the Property which does not result in a termination of this Lease, Landlord, at its expense ~~~~ her or not any award or awards shall be sufficient for the purpose, shall proceed with reasonable dili~~~~ pair any remaining parts of the Property (other than Tenant's property) to substantially their former ~~~~ to the extent that the same may be feasible (subject to reasonable changes which Landlord shall dee~~~~ ) and so as to constitute a complete and rentable the Property.

15. INSPECTIONS AND ACCESS TO PROPERTY.

Landlord or Landlord's agents shall have the righ~~~~ the Property at all times subsequent to reasonable notice to Tenant (except that no such notice shall ~~~~ in the case of an emergency) to examine the Property, to survey the Property, to show the prospectiv~~~~ rs, mortgagees or prospective tenants for the Building or space therein, and to make such reasonable ~~~~ alterations, improvements or additions as Landlord may deem necessary or desirable to the Property or ~~~~ er portion of the Building or which Landlord may elect to perform following Tenant's failure to m~~~~ ep~~~~ or perform any work which Tenant is obligated to perform under this Lease, or for the purpos~~~~ ~~~~ying with laws, regulations or other requirements of government authorities. Landlord shall be ~~~~ to take all material into and upon the Premises that may be required in connection with said activity~~~~ the same constituting an eviction or constructive eviction of Tenant in whole or in part and the Ren~~~~ll~~~~ otherwise abate while said activity is being conducted, by reason of loss or interruption of business ~~~~ or otherwise, so long as Landlord's activities do not unreasonably interfere with the operation of T~~~~t's ~~~~ness.

16. SUBORDINATIC~~~~ ~~~~ASE AMENDMENT.

This L~~~~ be subject and subordinate to any underlying land leases and/or mortgages which may now or here~~~~ ~~~~fe~~~~ ~~~~his Lease or the Property and to all renewals, extensions, supplements, amendments, modifications. ~~~~ so~~~~ ~~~~ions and/or replacement of the underlying land leases and/or mortgages and/or declarations~~~~ ~~~~inium. This clause shall be self-operative and no further instrument of subordination shall be requi~~~~ ~~~~ the interest of any lessor under an underlying land lease or mortgagee of any mortgage or declar~~~~ ~~~~ondominium superior to the interest of Tenant hereunder. However in confirmation of the subordinat~~~~ set forth in this Paragraph 16, Tenant shall, at Landlord's request, execute and deliver such further instruments as may be desired by any holder of a mortgage or by any lessor under any such underlying land leases and Tenant hereby irrevocably constitutes and appoints Landlord as Tenant's attorney-in- fact to execute any such certificate or certificates for and on behalf of Tenant if Tenant is unable to provide such certificate or certificates within ten (10) days of Landlord's request. In the event Landlord's mortgagee shall reasonably require any changes in or additions to this Lease, Tenant hereby agrees to amend this Lease to effect such changes or additions, to the extent such changes or additions hereto are commercially reasonable, and Landlord shall bear the full expense of the preparation and recording of the necessary written instruments;

NOT A CERTIFIED COPY

provided, however, nothing in this Paragraph 16 shall obligate Tenant to agree to any change in the amount of Rent required of Tenant hereunder, or to any change in the term of this Lease.

At any time, and from time to time, but on not less than five (5) days' Notice by Landlord, Tenant will execute, acknowledge and deliver to Landlord, promptly upon request, an estoppel certificate certifying, if accurate:

A.      That this Lease is unmodified and in full force and effect (or, if there have been modifications, that this Lease is in full force and effect as modified, and stating the date and nature of each modification);

B.      The date on which Rent and other sums payable hereunder have been paid and the amount of security deposit and prepaid Rent, if any;

C.      That no notice has been received by Tenant of any default which has not been cured except as to default specified in such certificate;

D.      That Landlord is not in default hereunder, except as to default specified in such certificate, nor is there now any fact or condition which, with notice or lapse of time or both, will become a default;

E.      Such other matters as may be reasonably requested by Landlord or any actual or prospective purchaser or mortgage lender. Any such certificate may be relied upon by any actual or prospective purchaser, mortgagee or beneficiary under any deed or mortgage of the Building or any part thereof; and

F.      Tenant hereby appoints Landlord as its attorney-in-fact for the purpose of preparing the estoppels certificate in the event Tenant is unable to provide such a certificate within the aforesaid five (5) day period.

If at any time prior to the expiration of the Initial Term or Renewal Term, as applicable, any underlying land lease shall terminate or be terminated for any reason, Tenant agrees, at the election and upon written demand of any owner of the Property or the Building, or of the lessor under any such underlying land lease, or of any mortgagee in possession of the Property or the Building, to attorn, from time to time, to any such owner, lessor or mortgagee, upon the then existing terms and conditions of this Lease, for the remainder of the term originally demised in this Lease, provided that such owner, lessor or mortgagee, as the case may be, or receiver caused to be appointed by the foregoing, shall then be entitled to possession of the Property. Notwithstanding the foregoing, this Lease shall not terminate by reason of the termination of any underlying land lease or declaration of condominium. The provisions of this paragraph shall inure to the benefit of any such owner, lessor or mortgagee, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the terminations of any such underlying lease or declaration of condominium, and shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions. Tenant, however, upon demand of any such owner, lessor or mortgagee, agrees to execute, from time to time, instruments in confirmation of the foregoing provisions of this paragraph, satisfactory to any such owner, lessor or mortgagee, acknowledging such attornment and setting forth the terms and conditions of its tenancy. Nothing contained in this paragraph shall be construed to impair any right otherwise exercisable by any such owner, lessor or mortgagee.

17.     INDEMNITY.

Tenant's Initials: ___
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

21

Tenant covenants and agrees to indemnify and save Landlord and its agents harmless from and against any and all claims, liabilities, fines, damages, penalties, suits, and expenses of all kinds or nature, including reasonable attorneys' fees, disbursements and costs, including those for appellate matters, which may be imposed upon or incurred by or asserted against Landlord by reason of or arising out of (i) any occurrences within the Property (except when such injury, loss or damage results from the gross negligence of Landlord, its agents or employees); (ii) any negligent or intentional acts of Tenant, its agents, employees, guests, invitees or contractors; or (iii) Tenant's default in the observance or performance of any obligations set forth in this Lease to be observed or performed by Tenant. The provisions of this Paragraph shall survive the expiration or sooner te___ ___n of this Lease.

Landlord covenants and agrees to indemnify and save Landlord and its a___ ___ h___ ___less from and against any and all claims, liabilities, fines, damages, penalties, suits, and expenses of a'l ___ ___ ___ature, including reasonable attorneys' fees, disbursements and costs, including those for appellate ma___ ___s, ___ch may be imposed upon or incurred by or asserted against Tenant by reason of or arising out of (i) the ___ ___ ___ or willful misconduct of Landlord or any other person or entity acting on Landlord's behalf and not ___ ___re ___ ___ the insurance required to be carried by Tenant hereunder; (ii) the gross negligence or willful miscond___ ___ ___lord or any other person or entity acting on Landlord's behalf; (iii) any accident, injury or damage ___ ___ ___ver (unless caused by Tenant negligence) occurring within the Outside Areas and caused by any or ___ ___ ___ord or any other person or entity acting on Landlord's behalf; (iv) any breach by Landlord of any c___ ___ ___ties and representations under this Lease; (v) any violation or alleged violation by any or all of L___ ___ ___ ___ any other person or entity acting on Landlord's behalf of any laws, statutes or regulations; and (___ ___ ___ ___for work or labor performed or materials supplies furnished to or at the request of any or all of Land___ ___ ___ y other person or entity acting on Landlord's behalf.

18.   <u>INSURANCE.</u>

A.   The Tenant covenan___ ___ ___vide on or before the Commencement Date and keep in force during the Term of this Lease, a commer___ ___ ___al liability insurance and excess liability policy insuring the Landlord and Tenant against bodily i___ ___ry ___ ___perty damage and personal injury This policy shall be in the minimum amount of One Million D___ ___ ___00,000.00) combined single limit coverage per occurrence with not less than a One Million Dollar ($1 ___0 ___ ___0) umbrella over the basic coverage. The policies shall include a Broad Form General Liability endors___ ___ ___re Legal Liability endorsement, and a Contractual Liability endorsement.

B.   ___ ___ its expense, shall maintain at all times during the term of this Lease, "all risk" property insurance c___ ___ of the Tenant's personal property, the tenant improvements, and Tenant's other improvements and ___ ___ ___ is installed by or on behalf of Tenant within the Property whether now or in the future for the full ins___ ___le ___ ze thereof; to include a replacement cost endorsement, written by a good and solvent insurance c___ ___ ___alified to do business in the State of Florida, naming Tenant as the insured. The original policies ___ ___ ___es thereof, together with evidence of payment therefor shall be delivered to Landlord prior to the Co___ ___ ___ent Date. Tenant shall renew said policy not less than thirty (30) days prior to the expiration date thereof fro___ ___me to time, and furnish said renewals and evidence of payment therefor to Landlord. Each such policy shall be non-cancelable for any cause and not be materially changed without first giving Landlord thirty (30) days' Notice. Tenant hereby waives any rights of action against Landlord for loss or damage to Tenant Improvements, Tenant's other improvements and betterments, and to fixtures and personal property in Property except when such injury, loss or damage results from the gross negligence of Landlord, its agents or employees.

Tenant's Initials
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

22

C.      During the entire term hereof, Tenant covenants to keep in full force and effect, at its own cost and expense, Rent Insurance covering all risk coverage, including, but not limited to the perils of fire, extended coverage and vandalism with loss for rent payable to the Landlord, in an amount equal to the Base Rent plus a sum equal to the previous year's CAM Expense obligation to the Landlord hereunder.

D.      The forgoing policies shall be written by good and solvent insurance companies  qualified to do business in the State of Florida and approved by Landlord and shall include the Landlord and Landlord's agent as additional named insured. The original policies or certificates thereof, together with evidence of payment therefor, shall be delivered to Landlord prior to the Commencement Date. Tenant shall renew said bond not less than thirty (30) days prior to the expiration date thereof, from time to time, and furnish said renewal evidence of payment therefor to Landlord. Such policies or certificates shall contain a provisions that the insurer will not cancel or materially change the policy without first giving Landlord thirty (30) days prior written notice.

19.     HOLDING OVER.

Tenant acknowledges that possession of the Property must be surrendered to Landlord at the expiration or sooner termination of the Term of this Lease. Tenant agrees to indemnify and save Landlord harmless against all costs, claims, loss or liability resulting from delay by Tenant in so surrendering the Property, including, without limitation, any claims made by any succeeding tenant founded on such delay. The parties recognize and agree that the damage to Landlord resulting from any failure by Tenant to timely surrender possession of the Property as ' aforesaid will be extremely substantial, will exceed the amount of the Monthly Rent and CAM Expense theretofore payable hereunder, and will be impossible to accurately measure. Tenant therefor agrees that if possession of the Property is not surrendered to Landlord on the date of the expiration or sooner termination of the Term of this Lease, then Tenant shall pay to Landlord, each month and for each portion of any month during which Tenant holds over in the Property after the expiration or sooner termination of the Term of this Lease, without the express written consent and approval of Landlord, a sum equal to one and a half times the aggregate of that portion of the Monthly Rental and CAM Expense (determined on an historical basis by Landlord) which was payable under this Lease during the last month of the Term hereof. Nothing herein contained shall be deemed to permit Tenant to retain possession of the Property after the expiration or sooner termination of the Term of this Lease. The provisions of this Paragraph shall survive the expiration or sooner termination of the term of this Lease.

20.     ENTIRE AGREEMENT; WAIVER.

This Lease contains the entire agreement of the parties hereto and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein, shall be of any force or effect. The failure of either party to insist in any instance on strict performance of any covenants or condition hereof; or to exercise any option herein contained, shall not be construed as a waiver of such covenant, condition or option in any other instance. This Lease cannot be changed or terminated orally but only by an agreement in writing signed by both parties hereto.

21.     WAIVER OF JURY TRIAL.

LANDLORD AND TENANT EACH HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY CLAIM, ACTION, PROCEEDING OR COUNTERCLAIM BY EITHER PARTY AGAINST THE OTHER ON ANY MATTERS ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT AND/OR TENANT'S USE OR OCCUPANCY OF THE PROPERTY.

Tenant's Initials: _____

P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

23

22.    HEADINGS.

      The headings in this Lease are included for convenience only and shall not be taken into consideration in any construction or interpretation of this Lease or any of its provisions.

23.    NOTICES.

      Any notice required or permitted hereunder to be given by either party to the other and designated a "Notice" herein shall be valid only if in writing and shall be deemed to be duly given only if delivered personally, sent by overnight courier or sent by registered or certified, postage prepaid U.S. Postal Service, addressed

    (i)    If to Tenant, at:    the address set forth in this Lease,

    (ii)   If to Landlord, at:   Investments Limited
                         C/O James H. Batmasian
                         215 North Federal Highway, Ste 1
                         Boca Raton, Florida 33432

or at such other address for either party as that party may designate. Notice to the other, Notice shall be deemed given, if delivered personally, upon delivery thereof; or if mailed, upon the posting thereof with sufficient postage affixed.

      Tenant hereby appoints as its agent to receive service of all dispossessory or distrait proceedings, the person in charge of the Property at the time occurring, the Property; if there is no person occupying the Property, such service may be made by attachment thereof on main entrance of Property.

24.    HEIRS AND ASSIGNS - PARTIES.

    A.    The provisions of this Lease shall bind and insure to the benefit of the Landlord and Tenant, and their respective successors, heirs, legal representatives, and assigns (subject to the provisions hereof relating to restrictions on Tenant's ability to assign), it being understood that the term "Landlord" as used in this Lease, means only the owner of the Property and the Building of which the Property are a part. Should the Building be severed as to ownership by sale and/or lease, then the owner of the entire Building or less of the entire Building that has the right to lease space in the Building to tenants shall be deemed the "Landlord." Tenant shall be bound to any such successor of such landlord for performance by Tenant of all the terms, covenants, and conditions of this Lease and agrees to execute any commercially reasonable attornment agreement not in conflict with the terms and provisions of this Lease at the request of any such succeeding Landlord.

    B.    The parties "Landlord" and "Tenant", and pronouns relating thereto, as used herein, shall include male, female, singular and plural, corporation, partnership or individual, as may fit the particular parties.

25.    TIME OF ESSENCE.

      Time is of the essence of this Lease.

26.    PREPAID RENT AND SECURITY DEPOSIT.

Tenant's Initials: ___

P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

24

Contemporaneously with the execution of this Lease, Tenant agrees to pay to Landlord August 2020 rent, and a security deposit equal to one (1) month's Rent (the "Security Deposit"). There shall be no last month's rent due under this Lease. This Security Deposit shall be used as security for the full and faithful performance and observance by Tenant of the covenants, terms and conditions of this Lease, including, without limitation, the payment of Monthly Rent, CAM Expense and any other charges payable under this Lease. It is agreed and acknowledged by Tenant that the Security Deposit is not an advance payment of Rent or a measure of Landlord's damages in the case of default by Tenant. Upon the occurrence of an event of default under this Lease, Landlord may use, apply or retain the whole or any part of the Security Deposit to the extent required for the payment of all or any part or component of any payments due to Landlord by Tenant hereunder, or any other sum as to which Tenant is in default, or for the payment of any other injury, expense or liability resulting from any event of default. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand an amount necessary to restore the Security Deposit to its original amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this Lease, the Security Deposit shall be returned, without interest, to Tenant within thirty (30) days after the expiration of the term of this Lease provided that the Property are delivered to Landlord in accordance with the terms hereof. The Security Deposit shall not be assigned or encumbered by Tenant, and any such assignment or encumbrance shall be void and a default hereunder. To the extent Landlord is reasonably able, Landlord shall make its commercially reasonable efforts to allow Tenant's employees to park off site.

27.   PARKING ARRANGEMENTS.

Tenant, its customers and its employees shall have the right to park automobiles in the parking spaces in the parking area of the Property, excluding however, trucks, commercial vehicles and campers in excess of one ton capacity or possessing more than four (4) wheels, and vehicles with a height of greater than 6'8", a length greater than 17'6" or a width greater than 8'. The parking spaces shall be used exclusively by Tenant, its customers and employees, and shall be made available on a "first-come, first served" basis. Landlord will allow Tenant to post signs which warn that unauthorized vehicles will be towed or immobilized. Further, Tenant shall have the right to take reasonable steps to ensure that Tenant, its customers, and employees have access to parking and unauthorized vehicles are addressed by towing or immobilization. Tenant agrees to cause all parties using parking spaces, including Tenant's employees, guests, invitees, and customers, to comply with the terms of this Lease regarding parking. Tenant shall have the right, but not the obligation, to utilize the parking areas of the Property for a valet style parking program at Tenant's sole cost and expense, provided that such valet service complies with municipal codes and or Landlord will use commercially reasonable steps to secure parking arrangements in nearby buildings for Tenant's employees.

28.   RULES AND REGULATIONS.

Tenant shall observe and comply with the Rules and Regulations annexed hereto as Exhibit "C" and made a part hereof; and such further reasonable rules and regulations as Landlord may prescribe on Notice to Tenant for the safety, care and cleanliness of the Building and Property. Landlord shall enforce the Rules and Regulations in a consistent manner without discrimination against or in favor of any particular tenant. If there is any conflict between the terms of this Lease and the Rules and Regulations, the terms of this Lease shall control.

29.   BROKER.

Tenant warrants and represents that it has negotiated this Lease directly with Landlord, and has not authorized or employed, or acted by implication to authorize or to employ, any real estate broker or salesman to act for Tenant in connection with this Lease. Landlord warrants and represents that it has not authorized or employed, or acted by implication to authorize or to employ, any real estate broker or salesman to act for

Landlord in connection with this Lease.

31.   **INTENTIONALLY OMITTED.**

32.   **IMPROVEMENT ALLOWANCE.**

At any time during the Lease, if Tenant elects to build a Private Bathroom (as hereinafter defined), Landlord shall provide Tenant an improvement allowance of Ten Thousand Dollars and Zero Cents ($10,000.00) (the "Improvement Allowance") which shall be used exclusively for the purposes of constructing a private bathroom accessible from the manager's office (the "Private Bathroom"). Tenant shall be solely responsible for all costs associated with the design, permitting, and construction of the Private Bathroom over and above the Improvement Allowance. Provided Tenant is not in default under this Lease beyond any applicable notice and cure period, the Improvement Allowance shall be paid by Landlord to Tenant within thirty (30) days after all of the following shall have occurred: (i) Tenant shall have constructed the Private Bathroom (ii) Tenant shall have provided Landlord with a final contractor's affidavit and unconditional final release and lien from Tenant's general contractor and all subcontractors and materialmen.

33.   **NO WAIVER.**

The failure of Landlord to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules and Regulations set forth or hereafter adopted by Landlord, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Landlord of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by Landlord. No payment by Tenant or receipt by Landlord of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided. No act or thing done by Landlord or Landlord's agents during the term hereby demised shall be deemed in acceptance of a surrender of said Property and no agreement to accept such surrender shall be valid unless in writing signed by Landlord. No employee of Landlord or Landlord's agents during the term hereby demised shall be deemed acceptance of a surrender of said Property and no agreement to accept such surrender shall be said unless in writing signed by Landlord. No employee of Landlord or Landlord's agent shall have any power to accept keys of said Property prior to the termination of the Lease and the delivery of keys to any such agent or employee shall not operate as a termination of the Lease or a surrender of the Property.

34.   **QUIET ENJOYMENT.**

Provided Tenant has performed all of the terms, covenants, agreements and conditions of this Lease, including the payment of Rent and all other sums due hereunder, Tenant shall peaceably and quietly hold and enjoy the Property against Landlord and all persons claiming by, through or under Landlord, for the term herein described, subject to the provisions and conditions of this Lease.

Landlord agrees to make reasonable efforts to protect the Tenant from interference or disturbance

by third persons; however, the Landlord shall not be liable for any such interference or disturbance, whether caused by other tenants of the Landlord or other persons, nor shall the Tenant be released from any of the obligations of this Lease because of such interference or disturbances; provided, however, that the foregoing shall not apply if such disturbance or interference with Tenant's possession of the Property is due to Landlord's default under this Lease or if it is due to Landlord's or its agent's or employees' negligent or intentional acts.

35.   FORCE MAJEURE.

Neither Landlord nor Tenant shall be required to perform any term, condition or covenant in this Lease so long as such performance is delayed or prevented by "Force Majeure", which sh... ...n labor controversies, strikes and lockouts (whether lawful or not) either industry-wide or with thir... ...ther than Landlord and Tenant, respectively, acts of God, material or labor unavailability, inability to ob... ...l or power, catastrophes, national or local emergencies, restrictions by any governmental authority, de... ...demics in Palm Beach County, civil riots, floods, and any other causes not reasonably within the contr... ...rd or Tenant and which by the exercise of due diligence, Landlord or Tenant, respectively, is unable... ...in part, to prevent or overcome. Lack of money shall not be deemed Force Majeure.

36.   RELATIONSHIP OF THE PARTIES.

Nothing contained herein shall be deemed or constru... ...parties hereto, nor by any third party, as creating the relationship of principal and agent or of partnersh... ...nt venture between the parties hereto, it being understood and agreed that neither the method of comp... ...f Rent, nor any other provision contained herein, nor any acts of the parties herein, shall be deemed to cr... ...relationship between the parties hereto other than the relationship of Landlord and Tenant.

37.   AUTHORITY.

Each person executing this L... ...on behalf of the Landlord and the Tenant does  hereby covenant and warrant that (i) the execution and deli... ...f ...s Lease is within the authority of the person doing so and is binding in all respects; and (ii) if any p... ...rporation or limited liability company, that it is duly organized and validly existing under the laws... ...tat of its formation, is authorized to transact business in the State of Florida, with full legal power and... ...perform its obligations as contemplated by this Lease.

38.   NO COUNTERCLA...

It is... ...greed that in the event Landlord commences any summary proceeding for possession of the P... ...nant will not interpose any non-compulsory counterclaim of whatever nature or description in any... ...eeding except in a separate action brought by Tenant. In the event Landlord commences a summary pr... ...and Tenant shall attempt to interpose a counter-claim and notwithstanding Landlord's objection a... ...sions of this Lease that the interposing of that counter-claim is not permitted, Tenant agrees and conf... ...shall deposit with the Court Registry, the amount of rent and CAM Expense due and owing in a summ... ...eeding instituted by Landlord. Tenant grants jurisdiction to the Court in such proceeding to require such depos... ...be made as a condition precedent to the determination of whether the interposing of a counter-claim shall be permitted notwithstanding the provisions of this paragraph to the contrary.

39.   RADON GAS.

Pursuant to Florida law Landlord notifies Tenant of the following:

Radon is naturally occurring radioactive gas that, when it has accumulated in a building in

Tenant's Initials:
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

27

sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of Radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding Radon and radon testing may be obtained from your county public health unit.

40.    HAZARDOUS SUBSTANCES.

A.    Definitions. The following terms as used in this Paragraph 39 shall have the meanings set forth below:

(a)    "Hazardous Substances" shall mean any hazardous or toxic substances, materials or wastes, including, but not limited to any flammable explosives, radioactive materials, friable asbestos, PCB's, electrical transformers, batteries, paints, solvents, chemicals, petroleum products, or other materials with hazardous, carcinogenic or toxic characteristics, and such other solid, semi-solid, liquid or gaseous substances which are toxic, ignitable, corrosive, carcinogenic or otherwise dangerous to human, plant or animal health or well-being, and those substances, materials, and wastes or such substances, materials and wastes which are or become regulated under any applicable local, state or federal law.

(b)    "Environmental Laws" shall mean any applicable present or future federal, state or local laws, ordinances, rules or regulations pertaining to Hazardous Substances, industrial hygiene, indoor air quality, OSHA regulations or environmental conditions.

(c)    "Claims" shall mean, individually and collectively, any claims, actions, administrative proceedings, judgments, damages, punitive damages, penalties, fines, costs, liabilities, sums paid in settlement, interest, losses or expenses incurred by Landlord, including reasonable attorneys' and legal assistants' fees, whether incurred in enforcing this Lease, collecting any sums due hereunder, settlement negotiations, at trial, appeal or in bankruptcy proceedings), consultant fees and expert fees, together with all other costs and expenses of any kind or nature, that arise directly or indirectly or in connection with Tenant's disposal, handling, use, storage, or transportation of Hazardous Substances within the Property in violation of the Environmental Laws, whether occurring or suspected to have occurred before, on or after the date of this Lease.

B.    Tenant shall indemnify and hold Landlord harmless from all Claims resulting from any violations or alleged violations by Tenant, Tenant's employees, licensees, invitees or agents of any Environmental Laws. This indemnity shall survive the expiration or early termination of the Lease. If the Property is in violation of the Environmental Law as a result of acts or omissions of Landlord or Landlord's agents, employees, or contractors, Landlord, at its sole cost and expense, shall be responsible for removal, remediation, and/or encapsulation of the same as required by the Environmental Laws. Landlord shall indemnify, defend and hold Tenant harmless from and against any and all claims, liabilities, injuries, damages, costs and expenses (including reasonable attorneys' and legal assistants' fees, whether incurred in enforcing this paragraph, collecting any sums due hereunder, settlement negotiations, at trial, appeal or in bankruptcy proceedings) incurred by Tenant and directly arising out of or related to any breach by Landlord of Landlord's representations and warranties or covenants contained in this Paragraph 39, which indemnity shall survive the expiration or early termination of the Lease.

41.    SAVING PROVISION.

If any provision of this Lease, or its application to any situation shall be invalid or unenforceable to any extent, the remainder of this Lease, or the application thereof to situations other than that as to which it is invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

42.     REMEDIES CUMULATIVE.

        The rights given to Landlord herein are in addition to any rights that may be given to Landlord by a statute or under law.

43.     EFFECTIVENESS OF LEASE.

        This Lease shall have no binding force or effect and shall neither confer any rights nor any obligations, including brokerage obligations, on either Landlord or Tenant unless and until both Landlord and Tenant shall execute this Lease.

44.     LANDLORD DEFAULT.

        If Landlord should fail to perform or observe any covenant, term, provision or condition of this Lease and such default should continue beyond a period of thirty (30) days (or such longer period as is reasonably necessary to remedy such default, provided Landlord shall diligently pursue the remedy until such default is cured) after Notice (the "Default Notice") thereof is given by Tenant to Landlord, then Tenant shall have the right to cure such default, and Landlord shall promptly reimburse Tenant for all reasonable sums expended in so curing said default. In the event of Landlord's failure to reimburse Tenant within thirty (30) days of receipt of Notice, the amount due and owning Tenant shall bear interest from the day of the receipt of the Notice by Landlord at the highest rate permitted by law. Following the occurrence of any such default, Tenant shall have the right to pursue any remedy available under applicable law for such default by Landlord, provided however, that in no case shall Tenant have any right to terminate this Lease on account of any such default. In the event of a default by Landlord, Tenant shall provide an additional thirty (30) days written notice to Landlord, and then without further notice or demand, Tenant shall have the right to pursue the remedy of specific performance in addition to all other rights and remedies provided at law or in equity or elsewhere herein (but subject to the limitations set forth in the previous sentence).

45.     GOVERNING LAW.

        This Lease shall be governed by and construed in accordance with the laws of the State of Florida and venue for any suit, action or other proceeding in regard to or arising out of this Lease shall be exclusively in Palm Beach County, Florida unless prohibited by applicable law.

46.     COUNTERPARTS.

        This Lease may be executed in several counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.

47.     RIGHT OF FIRST REFUSAL.

        Provided Tenant is not in default of this Lease, Tenant shall have a continuing right-of-first refusal to purchase from the Landlord the Premises if the Landlord shall enter into good faith meaningful negotiations with a third party to purchase the Premises or if the Landlord otherwise attempts to sell the Premises. The Landlord shall so notify Tenant. Tenant shall exercise the foregoing right-of-first refusal by delivering written notice thereof to Landlord within ten (10) days of Tenant's receipt of Landlord's notice.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals, as of the day and year first above written.

Signed, sealed and delivered in the presence of

TENANT:

PINNACLE ADVERTISING, LLC.,
a Florida limited liability company

Witness: _____

Print Name: _____

By: _____
Name:
Title:

Witness: _____

Print Name: BUSRA SERT

LANDLORD:

INVEST____ ___ ___ LIMITED
as ag__ ___
20 S. ___ ___STMENTS, LLC

Witness: _____

Print Name: _____

___e:
Title:

Witness: _____

Print Name: Jason Laz___

Tenant's Initials: _____
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

Exhibit "A"

<u>SITE PLAN</u>



Tenant's Initials:
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

31

Exhibit "B"

<u>BASE RENT SCHEDULE FOR INITIAL TERM</u>

Monthly Base Rent Year One:                                $11,581.33*

\* Except as modified by Section 3 above.

<u>BASE RENT SCHEDULE FOR RENEWAL TERM</u>

Monthly Base Rent Year One:                                $11,581.33

Monthly Base Rent Year Two:                                $11,581.33

Monthly Base Rent Year Three:                              $11,928.77

Monthly Base Rent Year Four:                               $12,286.63

NOT A CERTIFIED COPY

Exhibit "C"

## RULES AND REGULATIONS

1.      The sidewalks, entrances, passages, lobby, elevators, vestibules, stairways, corridors or halls outside the Premises shall not be obstructed or enclosed by any Tenant or used for any purpose other than ingress to and egress from the Premises and Tenant shall not permit any of its employees, agents or invitees to congregate in any said areas. No doormat of any kind whatsoever shall be placed or left in any public hall or outside any entry door of the Premises.

2.      No awnings or other projections shall be attached to the outside walls of the Building without the express written consent of Landlord, which may be withheld in Landlord's sole discretion. No curtains, blinds (except Building Standard Blinds), shades or screens shall be attached to, hung in, or used without prior written consent of Landlord. Such curtains, blinds, shades or screens must be of a quality, type, design and color, and attached in the manner, approved by Landlord.

3.      The sashes, sash doors, skylights, windows and doors that reflect or admit light and air into the halls, passageways or other public places in the Building shall not be covered or obstructed by Tenant, except for Landlord approved window coverings, nor shall any bottles, parcels or other articles be placed on the window sills.

4.      Except as permitted by this Lease, no sign, neon, insignia, advertisement, object notice or other lettering shall be exhibited, inscribed, painted, or affixed by any Tenant on any part of the exterior of the Premises or the Building (including, but without limitation, windows, doors and entrance lobbies) without the prior written consent of Landlord. Landlord's failure to enforce this rule shall not be deemed a waiver. In the event of the violation of the foregoing by any Tenant, Landlord may remove the same without any liability, and may charge any expense incurred in such removal to the Tenant or Tenants violating this rule. Interior signs and lettering on doors shall be of a size, color and style reasonably acceptable to Landlord.

5.      No article shall be put in front of or affixed to any part of the exterior of the Building without the prior written consent of the Landlord, which consent shall be at Landlord's sole discretion, nor placed in the halls, corridors or vestibules outside the Premises.

6.      The water and wash closets and other plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed, and no sweepings, rubbish, rags, acids, chemicals or other substances shall be thrown or deposited therein. All damages resulting from any misuse of the fixtures shall be borne by the Tenant who, or whose servants, employees, agents, visitors or licensees shall have caused the same.

7.      No boring, cutting or stringing of wires in violation of applicable laws, codes or regulations shall be permitted, except with the prior written consent of Landlord, and as Landlord may reasonably direct.

8.      Except for wheelchairs and single person self-propelled electric transporters aiding handicapped persons, no bicycles, animals, fish or birds of any kind shall be brought into or kept in or about the Premises.

9.      No noise, including, but not limited to, music or the playing of musical instruments, recordings, radio or television which disturbs other tenants of the Property, shall be made or permitted by any Tenant. Nothing shall be done or permitted in the Premises by Tenant which would unreasonably impair or interfere with the use or enjoyment by any other Tenant of any other space in the Building. No Tenant shall throw anything out of the doors, windows or skylights or down the passageways.

10.     Tenant, its servants, employees, agents, visitors, or licensees, shall not at any time bring or keep upon the

Tenant's Initials:
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

33

Premises any explosive fluid, chemical or substance, nor any inflammable or combustible objects or materials, in violation of any applicable law, ordinance or governmental regulation.

11.     Except for the door to Tenant's secure area, unless Tenant provides Landlord with a duplicate set of keys, additional locks or bolts of any kind which shall not be operable by the mater key for the Building shall not be placed upon any of the doors or windows by any Tenant, nor shall any changes be made in locks or the mechanism thereof which shall make such locks inoperable by said master or duplicate key. Each Tenant shall, upon the termination of its tenancy, turn over to the Landlord all keys for stores, offices and toilet rooms, either furnished to, or otherwise proved by, such Tenant. Tenant shall have the right to install additional security systems for the Premises, which systems will be coordinated with those operated by Landlord and its managing         . Keys or cards used in connection with such systems shall be furnished to Landlord or its managing agent.

12.     All removals, or the carrying in or out of any safes, freight, furniture, packages,               , or any other object or matter of any description must take place during such hours and in such loading         as Landlord or its agent may reasonably determine from time to time. Tenant shall not move ext          bulky furniture, machines, equipment, inventory, or other materials into or out of the Building       having first obtained permission from the Landlord reasonably in advance. Landlord reserves the righ            all objects and matter to be brought into the Building and to exclude from the Building all objects             which violate any of these Rules and Regulations or the Lease of which these Rules and Regulatio             . Landlord may require any person leaving the Building with any package or other object or matte             a pass, listing such package or object or matter, from the Tenant from whose premises the package             or matter is being removed, but the establishment and enforcement of such requirement shall not           responsibility on Landlord for the protection of any Tenant against the removal of property from             ises of such Tenant. Landlord shall in no way be liable to Tenant for damages or loss arising from the            , exception or ejection of any person to or from the Premises or the Building under provisions of this            or Rule 16 hereof.

13.     Tenant shall not engage or pay any employ             Premises, except those actually working for Tenant or its affiliates. Tenant shall not use the Premises            thereof, or permit the Premises or any part thereof to be used, for auction of merchandise, goods or              any kind, or for manufacturing, printing or business office reproducing or printing equipment and oth         ss machines except for Tenant's own requirements at the Premises; provided that such use shall            that portion of the mechanical or electrical capabilities of the Building equipment allocable to the P            es.

14.     Tenant shall not obtain            ias     accept for use in the Premises cleaning, floor polishing or other similar services from any persons no               y acceptable to Landlord.

15.     Tenant shall ha            per day access to the Premises subject, however, to Tenant's right to admittance under reasonable regul             escribed by Landlord, and to require the persons entering the Building to identify themselves and e            r right to enter or to leave the Building.

16.     All      th       oors into the Premises shall be left closed by Tenant when the Premises are not in use. Entrance           not be left open at any time. Landlord or its agents or contractors will turn off lights upon comple             aning services.

17.     The Premises shall not be used for lodging or for any purpose violating any laws or requirement of public authorities.

18.     The requirements of Tenant will be attended to only upon application at the property manager's office located 215 North Federal Highway, Suite 1, Boca Raton, FL 33432. Employees of Landlord shall not perform any work or do anything outside of their regular duties, unless under special instructions from Landlord.

19.     Canvassing, soliciting and peddling anywhere in the Property are prohibited.

20.     There shall not be used in any space or in the public hall of the Building or Parking Areas, either by any Tenant or by jobbers or any others, in the moving, delivery or receipt of safes, freight, furniture, packages, boxes, crates, paper, office material, or any other matter or thing, any bank trucks except those equipped with rubber tires, side guards and such other safeguards as Landlord shall reasonably require.

21.     Tenant shall not take or knowingly permit any action or use of the Premises which would violate any laws or requirements of public authorities; make void or voidable any fire or liability insurance policy then in force with respect to the Building or Parking Areas; make unobtainable from a reputable insurance agency authorized to do business in the State of Florida at standard rates any fire insurance with extended coverage, or liabili~ elevator or boiler or other insurance required to be furnished by Landlord under the terms of any lease or m~ ~ which this Lease is subordinate; cause physical damage to the Building or any part thereof; which w~ constitute a public or private nuisance; impair the appearance, character or reputation of the buildi~ ~ing Areas; discharge objectionable fumes, vapors or odors into the Building air conditioning sy~ ~o Building or Parking Areas flues or vents not designed to receive them or otherwise in such manner ~ ~ easonably offend other occupants.

22.     Tenant shall not take or knowingly permit any action which would ~ interfere with any of the Building or Parking Areas services or the proper and economic heating, cle~ ~nditioning or other servicing of the Building or Parking Areas or the Premises, or impair or interfere ~ ~ to impair or interfere with the use of any of the other areas of the Building or Parking Area~ ~ ~on of discomfort, annoyance or inconvenience to, Landlord of any of the other Tenants or occupa~ ~ ~ilding.

23.     Landlord, in its reasonable judgment, reserves the ri~ ~ ~nd, alter or waive any rule or regulation at any time prescribed for the Building or Parking Areas w~ ~ ~easonable judgment, it deems it necessary or desirable for the reputation, safety, care or appearance ~ ~ing or Parking Areas, or the preservation of good order therein, or the operation of maintenance of t~ ~ ~g or Parking Areas or the equipment thereof, or the comfort of Tenants or others in the Building.

24.     Other than customary and norma~ ~ deliveries, Tenant shall receive and deliver goods and merchandise only in the manner, at such ~ ~in such areas, as may be designated by Landlord; and all trash, refuse, and the like, shall be kept in su~ ~ ~ary containers as directed by Landlord, which containers shall be kept within the Premises at all time~ ~event stored outside of the same. If provisions are made by Landlord for trash removal by a contracto~ ~ ~rees to use said contractor for it trash removal. Tenant agrees to abide by, at Tenant's sole cost and ~ ~y recycling requirements of any federal, state or local authorities.

25.     Tenant will, at ~ ~pense, maintain the Premises in a clean, orderly and sanitary condition and free of insects, vermin, r~ ~ ~other pests; however, Tenant has no duty to engage any pest control company. Tenant, at Tenant'~ ~p~ ~, will provide sufficient refuse, trash, and garbage containers to  accomplish the foregoing. Dur~ ~ ~ ~working hours all refuse, trash and garbage and containers for the  same will be placed in the Prem~ ~.

26.     Tenant ~ ll furnish the Landlord an "after-hours" emergency telephone number, for the sole use of the Landlord ~ discretion.

27.     Tenant shall comply with such rules and regulations governing the Parking Areas as may be promulgated from time to time by Landlord, including, without limitation, rules and regulations requiring the parking of vehicles in designated spaces or areas or regarding the exclusion or other spaces or areas.

28.     Subject to, and apart from Landlord securing the Dealership Approval set forth in this Lease, if any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business in the

Premises, or any part thereof, other than a Certificate of Occupancy, and if failure to secure such license or permit would adversely affect Landlord, then Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same to inspection by Landlord. To the extent Landlord would otherwise be adversely affected, Tenant shall at all times comply with the terms and conditions of each such license or permit, and failure to procure and maintain same by Tenant shall not affect Tenant's obligations hereunder.

29.    Tenant shall not at any time use or occupy or suffer or permit anyone to use or occupy the Premises, or do or permit anything to be done in the Premises, in violation of the Certificate of Occupancy for the Premises or for the Building.

30.    Tenant shall not place a load upon any floor of the Premises exceeding the floor load per squa    which such floor was designed to carry and which is allowed by certificate, rule, regulation, permit    Business machines and mechanical equipment shall be placed and maintained by Tenant at Tenant    in such a manner as shall be sufficient in Landlord's reasonable judgment to absorb and preve    anon, noise and annoyance.

31.    Except as it may be expressly permitted by Tenant's Lease, Tenant sha    any antenna or aerial wires, or radio or television equipment, or any other type of equipment, inside    de of the Building or Parking Areas or on the roof of the Building or Parking Areas, without Landlord's    val in writing and upon such terms and conditions as may be specified in each and every instance.

32.    The Premises, the Building (except for restaurant and loun    the Parking Areas shall be smoke-free. Tenant to the extent reasonably practicable shall enforce a    smoking within the Premises, Building and Parking Areas. Landlord, to the extent reasonably practic    enforce a policy of no smoking within the Building.

EXHIBIT "B"

## GUARANTY

As inducement for Landlord to enter into that certain Commercial Lease Agreement dated April ___, 2020 (the "Lease") INVESTMENTS LIMITED as agent for the property owner (the "Landlord"), and PINNACLE ADVERTISING, LLC., a Florida limited liability company (the "Tenant") for a portion of the property known as and located at 20 SE 3rd Street, Boca Raton Florida, 33432 (the "Premises") and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the undersigned guarantor PINNACLE ADVERTISING AND MARKETING GROUP, LLC (the "Guarantor"), guarantees to Landlord, Landlord's successors and assigns, subject to the limitation set forth below, the full performance and observance of all the agreements to be performed and observed by Tenant pursuant to the Lease, including but not limited to the payment of any and all rent, additional rent and any other monetary amounts due to Landlord, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under guaranty, all of which the undersigned herby expressly waives. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, amendment or extension of the Lease. As a further inducement to Landlord to make the Lease and Guarantor agree that in any action or proceeding brought by either Landlord or the Guarantor against the other on any matters concerning the Lease or of this guaranty that landlord and the undersigned shall and do waive trial by jury. Landlord shall not be required to take any proceedings against the Tenant, or give any notice to the undersigned before Landlord has the right to demand payment or performance by the undersigned upon default by the Tenant. This Guaranty shall be limited to an amount equal to the sum of i) twelve (12) months' rent (both Base Rent and CAM Expense) due under the Lease; and ii) any and all back rent due at the time Landlord recaptures the Premises from Tenant (the foregoing, collectively the "Guaranty").

IN WITNESS WHEREOF, the guarantor has hereunto set his hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:
Witness as to both

Guarantor:

PINNACLE ADVERTISING AND MARKETING GROUP, LLC
a Florida limited liability company

_____
Witness

_____
Witness

By: Peter Gary
Its: Manager

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _____ day of April 2020. Peter Gary is personally known to me or she has produced _____ as identification.

January 2021.

_____
Notary Public
Printed Name: Jessica Marie Rodriguez
My Commission Expires _____

Tenant's Initials: _____
P:\2-Commercial Leasing\Properties\20 SE 3rd Street\Leases\LEASE- Pinnacle Advertising LLC Execution.doc

37

EXHIBIT "C"

**INVESTMENTS LIMITED**
**215 North Federal Highway**
**Boca Raton, Florida 33432**
**(561)392-8920**

Wednesday, May 12, 2021

PINNACLE ADVERTISING, LLC.                                    Property ID:611-01
PETE GARY                                                                Lease ID:t0003968
20 S.E. 3RD STREET
BOCA RATON, FL  33432

## STATUTORY NOTICE TO PAY RENT OR DELIVER POSSESSION

You and all others in possession of the property located at

20 SE 3RD STREET
BOCA RATON, FL  33432

The undersigned represents the owner of the above referenced property. You are h~~e~~~~b~~ ~~notif~~ied that you are indebted to the owner of the real property in the sum of $19,284.83 for rent and additional re~~nt~~ ~~for th~~e month in which this  notice is delivered, or the use of the premises above described now occupied by you. T~~he ow~~~~ner~~ ~~h~~ereby demands payment of said past due charges or possession of the premises within THREE (3) days (ex~~cl~~~~ud~~i~~ng~~ date of service, Saturdays, Sundays and any legal holiday) from the date of delivery of this notice, to ~~y~~~~ou~~ ~~on~~ before 5/17/2021 such date being not less than THREE (3) days from the date of this notice. The funds are t~~o~~ ~~be p~~~~ay~~~~abl~~e to Investments Limited and delivered to the address set forth above. This notice is given to you pursuant t~~o F~~~~lorid~~a ~~s~~tatutes section 83.

**If you feel you have received this message in error or have ~~alr~~~~eady s~~ubmitted payment, please contact the undersigned.**

You are further advised that this notice is not intended a~~s a~~ ~~termi~~nation of tenancy and therefore in the event the owner retakes possession pursuant to legal proceedings, o~~r i~~~~f you l~~eave, you relinquish possession voluntarily, the owner shall be retaking possession on your behalf, and exercis~~e i~~~~ts rig~~hts of mitigation.

_(signature)_

Pradiptee Lama
Investments Limited

** This is the current rent amoun~~t d~~~~ue for~~ the month in which this notice is delivered and may not include the amounts due, if any, of the previously ~~char~~~~ged u~~npaid Common Area Maintenance charges, Florida sales tax, late fees, monthly rent, key money, percentag~~e re~~~~nt, m~~ortgages, and/or promissory notes between the parties and will not constitute a waiver of any default of ~~thos~~~~e agr~~ements.**

PROOF OF SERV~~ICE~~
I certify that I se~~rved~~ ~~a tru~~e and correct copy of the foregoing notice on the above named tenant by:

Certified M~~a~~il No. _____ , this day of _____
Regular Mail _____ ~~d~~ay of _____
This notice was served upon the person owing the rent this day of _____ 5/12/2021
_____ Posting
_____ Personal Service

By: _____

_(signature)_

Pradiptee Lama
Investments Limited